THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH SMITH, Defendant-Appellant.

First District (1st Division)   No. 1—01—2558

Opinion filed June 16, 2003.

Michael J. Pelletier and Beth Herndobler, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Following a jury trial, defendant, Joseph Smith, was found guilty of first degree murder and attempted armed robbery. He was sentenced to concurrent prison terms of 55 and 14 years. Defendant's conviction and sentence were affirmed on direct appeal (*People v. Smith*, No. 1—95—2553 (1997) (unpublished order pursuant to Supreme Court Rule 23)), and he subsequently filed a *pro se* petition for postconviction relief, which was summarily dismissed. Defendant then filed a successive *pro se* postconviction petition, which was also summarily dismissed. Defendant appeals the dismissal of his successive petition, contending he presented the gist of meritorious claims of actual innocence based on newly discovered evidence and of ineffective assistance of trial and appellate counsel. Defendant further contends, for the first time on appeal, that his trial attorney was ineffective for failing to object to an erroneous Illinois Pattern Jury Instruction. We affirm the dismissal of his petition for the reasons that follow.

## BACKGROUND

The facts of this case are set forth in this court's disposition of defendant's direct appeal. As a result, only the facts relevant to the issues at hand will be repeated. The evidence presented at trial established that on April 7, 1992, Frank Miranda was shot to death in a vacant lot at the corner of 47th Street and Leamington Avenue in Chicago. Eyewitnesses Dale Sramek, Bobby Severson and Charles Queen testified that Sramek and Miranda went to the corner of 47th Street and Leamington Avenue around midnight on April 6, 1992, to purchase drugs. While there, they were joined by Severson and Queen, who were also attempting to purchase drugs. Sramek testified that he and Miranda had been smoking crack cocaine that night, and Severson stated he had consumed "a couple" beers.

A man, later identified as codefendant Antoine Edwards, asked Miranda and Severson if they wanted to buy some crack cocaine. Severson said yes, and Edwards said he would be back in 10 minutes. Edwards returned in 20 minutes with another man, later identified as defendant. When Miranda approached Edwards and defendant, defendant pulled out a shotgun and demanded money. Miranda cursed at him and turned around to walk away. Defendant then shot Miranda in the back, killing him.

After apprehending Edwards more than five weeks after Miranda's murder, police went to the homes of defendant and Antoine Crawford. Police then contacted Severson, who had not previously spoken to them about the murder. At the police station, Severson viewed Ed-

wards in a lineup and identified him as the man who first approached him and his friends. Several hours later, Severson identified defendant as the shooter in a photo array and in a lineup. Although Severson and Queen also identified defendant as the shooter at trial, the trial occurred three years after the shooting and Queen had not previously identified defendant outside of court.

Chicago police department Detective Michael Duffin and Assistant State's Attorney (ASA) James Sullivan both testified at trial that, while in police custody, defendant confessed to the shooting. Defendant told Duffin and Sullivan that he shot Miranda, and he and Edwards took the gun to the home of Antoine Crawford; however, defendant refused to sign a written statement to that effect.

Defendant testified in his own behalf that he was at home studying on the night of the murder. He denied having any involvement in the shooting and denied making a confession to Duffin and Sullivan. He stated that Duffin and Sullivan presented some papers to him at the police station, but he refused to sign them.

After deliberating for approximately four hours, the jury sent a note to the trial judge stating it could not come to an agreement after four votes. The court ordered the jury to continue deliberating. Soon thereafter, because it was 10 p.m., the jury was sequestered. The following day, the jury returned verdicts of guilty for first degree murder and attempted armed robbery. The trial court sentenced defendant to concurrent prison terms of 55 years for murder and 14 years for attempted armed robbery.

On direct appeal, defendant contended that he was denied his constitutional right to confront the witnesses against him, the prosecutor's arguments were inflammatory, and his sentence was excessive. This court affirmed his convictions and sentence. *People v. Smith*, No. 1—95—2553 (1997) (unpublished order under Supreme Court Rule 23). Defendant's petition for leave to appeal to the Illinois Supreme Court was denied.

Defendant subsequently filed a *pro se* postconviction petition, alleging that he was not proven guilty beyond a reasonable doubt, his arrest should have been quashed, the State's witnesses perjured themselves, his trial counsel was ineffective, and his sentence was excessive. The trial court summarily dismissed the petition finding that all of the issues had been waived or were barred under the doctrine of *res judicata*. Defendant filed a late notice of appeal from the dismissal, which was denied.

On December 21, 2000, defendant filed a successive *pro se* petition for postconviction relief. Among other things, the petition raised allegations of actual innocence based on newly discovered evidence and

of ineffective assistance of trial and appellate counsel. In support of his claim of newly discovered evidence, defendant provided the affidavit of codefendant Edwards, which stated that Edwards and "a guy named Snake" attempted to rob, then murdered Miranda on the night of April 7, 1992.[1] Edwards swore in his affidavit that defendant is not Snake and was not with him on the night of April 7, 1992. Edwards further stated that he gave this information to his lawyer prior to defendant's trial, but was told to "remain quiet." At that time, he was also afraid Snake might harm his family. Edwards stated he was providing the affidavit to clear his conscience and "free an innocent man."

In support of his ineffective assistance of trial counsel claim, defendant attached the affidavit of Michael Williams. Williams averred that he witnessed a shooting on the night of April 7, 1992, in the 4600 block of Leamington Avenue. He stated that Antoine Edwards and another man he did not know were involved in the shooting and he was certain defendant was not present and was not the shooter. Finally, defendant argued his appellate counsel was ineffective for various reasons that are not presented in this appeal.

Defendant's successive petition was summarily dismissed by the trial court as frivolous and patently without merit, and we granted defendant's motion to file a late notice of appeal. On appeal, defendant contends his petition raised the gist of meritorious constitutional claims of actual innocence based on newly discovered evidence, ineffective assistance of trial counsel and ineffective assistance of appellate counsel. He argues for the first time on appeal that his trial counsel was ineffective for failing to object to an improper jury instruction and his appellate counsel was ineffective for failing to challenge Queen's in-court identification of defendant.

## ANALYSIS

■ The Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2000)) provides an opportunity for a defendant to assert that his conviction was the result of a substantial deprivation of his constitutional rights. *People v. Mahaffey*, 194 Ill. 2d 154, 170 (2000). An action for postconviction relief is a collateral attack, not an appeal from an underlying judgment. *People v. Morgan*, 187 Ill. 2d 500, 527-28 (1999). In order to be entitled to postconviction relief, the defendant

---

[1]Although we acknowledge that both Antoine Edwards' and Michael Williams' affidavits refer to a shooting on the night of April 7, 1992, we assume for the sake of argument that they meant the night of April 6 or the morning of April 7, 1992. The trial testimony established that the shooting of which defendant was convicted occurred just after midnight on April 7, 1992.

must establish that there was a substantial deprivation of his constitutional rights in the proceedings that produced the judgment being challenged. *Mahaffey*, 194 Ill. 2d at 170.

■ In cases where the death penalty is not involved, postconviction proceedings involve three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). The current petition was summarily dismissed after the first stage of review. During the first stage, the trial court reviews the petition within 90 days of filing and determines whether it is frivolous or patently without merit. 725 ILCS 5/122—2.1(a)(2) (West 2000). To survive summary dismissal, a *pro se* petitioner need only raise the "gist" of a meritorious constitutional claim (*Gaultney*, 174 Ill. 2d at 418), but he must provide affidavits, records, or other evidence to support his allegations or explain why none could be obtained (725 ILCS 5/122—2 (West 2000); *People v. Collins*, 202 Ill. 2d 59, 66 (2002)). The court may also consider the allegations in light of the trial record and may dismiss the petition if they are contradicted by that record. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). The State is not entitled to raise any arguments during the summary review stage. *Gaultney*, 174 Ill. 2d at 418. Our review of a dismissal at the first stage of postconviction proceedings is *de novo*. *Coleman*, 183 Ill. 2d at 388-89.

■ Initially, the State contends that the arguments defendant raises in his successive postconviction petition are waived because they could have been raised in his first petition. Pursuant to section 122—3 of the Act, a claim alleging the substantial denial of a constitutional right that was not raised in the original or an amended postconviction petition is considered waived when asserted in a successive petition. 725 ILCS 5/122—3 (West 2000); see *People v. Britt-El*, 206 Ill. 2d 331, 339 (2002) ("[W]e discern no reason why the additional claims could not have been included in defendant's first petition. Accordingly, those claims in defendant's second petition which were not included in his first petition are waived"). The State urges that this section of the Act is applicable to stage-one dismissals and, therefore, defendant's claims are waived pursuant to section 122—3.

■ In employing waiver in the context of a successive petition, the Illinois Supreme Court has stated that the procedural hurdles to filing such petitions should only be "lowered in very limited circumstances" where required by fundamental fairness. *People v. Tenner*, 206 Ill. 2d 381, 392 (2002); see *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002). To determine whether fundamental fairness mandates consideration of a successive petition such as this one, the supreme court requires us to review the claim under the "cause and prejudice test." *Britt-El*, 206 Ill. 2d at 339; *Pitsonbarger*, 205 Ill. 2d at 459. Cause is defined as an objective factor, external to the defense, that impeded the

defendant's efforts to raise the claim in an earlier proceeding. *Britt-El*, 206 Ill. 2d at 339. Prejudice is defined as " 'an error which so infected the entire trial that the resulting conviction violates due process.' " *Britt-El*, 206 Ill. 2d at 339, quoting *People v. Jones*, 191 Ill. 2d 194, 199 (2000); see also *People v. Flores*, 153 Ill. 2d 264, 279 (1992). A defendant must demonstrate both cause and prejudice with respect to each claim raised in his successive petition. *Britt-El*, 206 Ill. 2d at 339. However, even where a defendant cannot show cause and prejudice, his failure to raise a claim in an earlier petition may be excused to prevent a fundamental miscarriage of justice. *Pitsonbarger*, 205 Ill. 2d at 459. "To demonstrate such a miscarriage of justice, a petitioner must show actual innocence or, in the context of the death penalty, he must show that but for the claimed constitutional error he would not have been found eligible for the death penalty." *Pitsonbarger*, 205 Ill. 2d at 459; see also *Sawyer v. Whitley*, 505 U.S. 333, 339, 120 L. Ed. 2d 269, 279-80, 112 S. Ct. 2514, 2519 (1992) (actual innocence defined in the context of federal *habeas corpus* petitions as a colorable claim of factual innocence under the probative evidence).

■ Contrary to the State's argument, defendant maintains that the above cause and prejudice requirements do not apply to the first stage of review because successive petitions may not be summarily dismissed for failure to raise the allegations therein in the first post-conviction proceeding. In support of this contention, defendant cites *People v. Boclair*, 202 Ill. 2d 89 (2002). He argues that *Boclair* stands for the proposition that a postconviction petition may only be summarily dismissed if the trial court finds it frivolous and patently without merit, not on the basis of waiver or *res judicata*. Consequently, he urges that even if he could have raised the issues contained in his successive petition in his earlier petition, this would not provide a proper basis for the summary dismissal of his successive petition.

*Boclair* does not specifically address the defenses of waiver and *res judicata*. *Boclair* does suggest that affirmative defenses such as untimeliness should not be raised by the court *sua sponte*, reasoning, which when left to itself, would extend to waiver and *res judicata* as well. However, *Boclair* does not rest its result on that factor alone. Arguably, *Boclair*'s holding is restricted to the defense of untimeliness, primarily upon the basis that timeliness is not integral to a determination of whether a petition is frivolous and without merit under section 122—2.1(a)(2) of the Act. 725 ILCS 5/122—2.1(a)(2) (West 2000). Instead, the timeliness requirement is set forth in a separate provision of the Act at section 122—1(c) (725 ILCS 5/122—1(c) (West 2000)) and, in the words of *Boclair*, is more akin to a statute of limitations. *Boclair*, 202 Ill. 2d at 98. Waiver and *res judicata*, on the other hand,

while generally deemed to be affirmative defenses, can be character-ized for purposes of the Act as being integral to the substantive merits of the petition. It is clear that the Act is not intended to provide for the retrial of issues that were or could have been raised during a previous proceeding. *People v. Kitchen*, 189 Ill. 2d 424, 432 (1999) ("The scope of the proceedings is limited to constitutional matters that have not been, nor could have been, previously adjudicated. Any issues which could have been raised on direct appeal, but were not, are procedurally defaulted [citation], and any issues which have previ-ously been decided by a reviewing court are barred by the doctrine of *res judicata*"). Consequently, it would not be inconsistent to permit summary determination with respect to those defenses, even though it would not be appropriate for the timeliness defense.

We recognize that the impact of *Boclair* on the defenses of waiver and *res judicata* were recently addressed in the case of *People v. McGhee*, 337 Ill. App. 3d 992 (2003). In *McGhee*, the court extrapolated the reasoning in *Boclair* to apply to other affirmative defenses such as waiver and *res judicata* as well as to timeliness based upon *Boclair*'s affirmance of *People v. McCain*, 312 Ill. App. 3d 529 (2000). *McGhee*, 337 Ill. App. 3d at 994-95. *McCain* equated the affirmative defense of untimeliness to waiver and *res judicata*, holding all three to be inap-propriate for stage-one resolution. The holding in *McCain* was largely predicated upon the rationale that, like untimeliness, waiver and *res judicata* are affirmative defenses which are adversarial in nature and should not be raised *sua sponte* by the trial court to justify the sum-mary dismissal of a *pro se* postconviction petition, but must be raised by the State to be preserved. *McCain*, 312 Ill. App. 3d at 531. As we previously noted, we do not necessarily agree that *Boclair* compels similar treatment for the defenses of waiver and *res judicata* as it does for timeliness. Timeliness is treated under a separate provision of the Act (see 725 ILCS 5/122—1(c) (West 2000)) and, unlike waiver and *res judicata*, does not enter into a determination of the substantive merits of the petition as mandated under section 122—2.1(a)(2) (725 ILCS 5/122—2.1(a)(2) (West 2000)). As pointed out, the substantive scope and purpose of the Act was not designed to provide for the retrial of issues that either were previously decided or could have been raised and decided at an earlier time. Consequently, waiver and *res judicata*, although procedural constructs, are also substantive considerations to the extent that they define and limit the substantive scope and purpose of the Act. Timeliness, on the other hand, is a consideration wholly collateral to the Act's substantive scope and purpose, which is consistent with the fact, as noted, that it is treated under a separate provision. However, we are not compelled here to finally resolve

whether to extrapolate the holding of *Boclair* to extend to waiver and *res judicata* as well as to timeliness since the holdings in *McCain*, as affirmed by the supreme court's decision in *Boclair*, and *McGhee*, which would prevent summary determinations based on waiver and *res judicata* as well as untimeliness, involve first petitions and do not purport to deal with successive petitions. While the appellate decision in *People v. Boclair*, 312 Ill. App. 3d 346 (2000), involved a supplemental petition, the supreme court in its decision did not characterize the petition as being successive, but dealt with it as if it were a primary petition. In any event, the facts in the underlying *Boclair* case, unlike *McCain*, involved only a defense of timeliness and did not involve waiver or *res judicata*.

When dealing with a successive petition, as in this case, we must defer to *People v. Britt-El*, 206 Ill. 2d 331 (2002), which likewise involved a successive petition. *Britt-El* squarely permits the first-stage dismissal of a successive postconviction petition on the basis of waiver. *Britt-El* was decided the same day as *Boclair* and controls the disposition of this case. In *Britt-El*, the defendant filed a successive postconviction petition, which was summarily dismissed by the trial court. The supreme court affirmed, concluding that the claims not raised in the defendant's first petition were waived because the defendant could not establish cause for his failure to do so. *Britt-El*, 206 Ill. 2d at 338. The claims that were raised in the original petition, and had been asserted for a second time, were also properly summarily dismissed, as the court found the defendant had been afforded the opportunity to "fully and finally litigate[ ]" those claims in the original proceeding. *Britt-El*, 206 Ill. 2d at 342. The court thereby affirmed the trial court's ability to dismiss a successive postconviction petition on the bases of waiver and *res judicata* in the first stage of review.

The distinction between first petitions and successive petitions, with regard to the propriety of a summary dismissal based on an affirmative defense such as waiver, is a distinction with an articulable difference. Successive petitions elicit unique policy considerations that are not implicated by the filing of a first petition. As the supreme court reasoned in *Britt-El*, there is less interest in providing a forum for the vindication of a defendant's constitutional rights in a successive proceeding because the defendant has already been afforded an opportunity to raise such allegations in his first petition. See *Britt-El*, 206 Ill. 2d at 341; see generally *Pitsonbarger*, 205 Ill. 2d 444. Consequently, successive petitions can only be entertained when fundamental fairness so requires, as determined by a cause and prejudice test. See *Pitsonbarger*, 205 Ill. 2d at 459. In that respect, the waiver defense is subsumed by the first prong of the cause and

prejudice test, wherein cause is defined as an objective factor external to the defense that prevented the defendant from raising the claim in the first proceeding. See *Britt-El*, 206 Ill. 2d at 339; *Pitsonbarger*, 205 Ill. 2d at 459. Thus, waiver, which would be a procedural affirmative defense for purposes of the first petition, becomes a substantive consideration going to the merits of a successive postconviction petition. See *Pitsonbarger*, 205 Ill. 2d at 458 ("[i]n the context of a successive post-conviction petition, *** the procedural bar of waiver is not merely a principle of judicial administration; it is an express requirement of the statute"). For that reason alone, the waiver defense could appropriately be decided at stage one with regard to a successive petition even if we were to agree with *McCain* and *McGhee* that it would be inappropriate with regard to a first petition.

Secondly, although there may be reluctance to invoke procedural bars *sua sponte* when considering a first petition, there would be far less reluctance to consider procedural bars *sua sponte* in a successive petition because the courts have an independently valid interest in limiting the number of successive petitions that may be filed. As the United States Supreme Court has stated in the context of successive *habeas corpus* petitions, "Without finality, the criminal law is deprived of much of its deterrent effect. The fact that life and liberty are at stake in criminal prosecutions 'shows only that "conventional notions of finality" should not have as much place in criminal as in civil litigation, not that they should have none.' " (Emphasis omitted.) *Teague v. Lane*, 489 U.S. 288, 309, 103 L. Ed. 2d 334, 355, 109 S. Ct. 1060, 1074-75 (1989), quoting H. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 150 (1970). In this regard, the courts look to finality as well as judicial economy. See *McCleskey v. Zant*, 499 U.S. 467, 491, 113 L. Ed. 2d 517, 542-43, 111 S. Ct. 1454, 1468 (1991); *Murray v. Carrier*, 477 U.S. 478, 490-91, 91 L. Ed. 2d 397, 410, 106 S. Ct. 2639, 2647 (1986), quoting *Reed v. Ross*, 468 U.S. 1, 10-11, 82 L. Ed. 2d 1, 11, 104 S. Ct. 2901, 2907 (1984). The same reasoning applies to successive postconviction petitions as to successive *habeas corpus* petitions, and our courts have not hesitated to look to the process employed for successive *habeas corpus* petitions to determine the standard to be applied in considering a successive postconviction petition. See, *e.g.*, *Tenner*, 206 Ill. 2d at 391; *Pitsonbarger*, 205 Ill. 2d at 458; *Flores*, 153 Ill. 2d at 278-79. It is these considerations that are at the root of the deployment of the cause and prejudice test to narrow the window of opportunity to present a successive postconviction petition in the first instance. Consistent with this reasoning, we find that the court here did not err in summarily rejecting defendant's successive petition at stage one.

Defendant would urge that his claim of newly discovered evidence is not waived because it was previously unavailable. We first point out that under the cause and prejudice test, which must be applied to successive petitions, cause generally requires a showing that some objective factor, external to the defense, impeded the defendant's efforts to raise the claim in his first proceeding. *Britt-El*, 206 Ill. 2d at 339. On that basis, as previously noted, we find that defendant has waived this claim for failing to allege what, if any, objective factor precluded him from obtaining the affidavits at an earlier time. He has provided this court with no reason to excuse his failure to present this issue in his first petition and it is his burden to do so. See *People v. Holman*, 191 Ill. 2d 204, 211 (2000) (court found the defendant's claim to be barred because the defendant presented no basis to excuse his failure to raise the issue in his first petition).

Furthermore, the record and defendant's successive petition reflect that the testimony of Edwards and Williams was previously available to him and this claim could have been raised in his first petition. First, we fail to see how defendant could not have known of the existence of Edwards, his own codefendant, and the alleged testimony he could have provided. Defendant does not claim that Edwards refused to testify, was unavailable or was undiscoverable for some other reason outside of his control. Second, defendant admits in his successive petition that his counsel knew about Williams at the time of trial. In the first paragraph of this particular ineffective assistance claim, defendant states his attorneys "failed to investigate those 'eye' witnesses [*sic*] that had been known to them the whole time that [defendant] was charged with this crime." In the next paragraph defendant argues, among other things, that his attorneys were ineffective for failing to "bring about" the testimony of Williams. We assume, then, that Williams was one of the eyewitnesses counsel was aware of and failed to investigate. Because defendant had been aware of Williams' existence since trial, we discern no reason why he could not have raised this issue in his first petition. Accordingly, this issue is waived, particularly under the first prong of the cause and prejudice test.

Moreover, even if defendant were able to establish that this evidence could not have been produced earlier, he cannot satisfy the second prong of the cause and prejudice test. To show prejudice, a defendant must establish that the alleged error so infected his entire trial that his conviction violates due process. *Britt-El*, 206 Ill. 2d at 339. As discussed below, we reach this conclusion by reviewing the merits of the issue and determining that it would not have been successful even if raised in defendant's first petition. See *Pitsonbarger*,

205 Ill. 2d at 469-70 (the defendant suffered no prejudice from the waiver of his successive claim because the claim would have failed even if it had been raised in the defendant's first postconviction petition). Applying that analysis, we find that the defendant here is likewise unable to show prejudice for purposes of the fundamental fairness exception and the issue fails on its merits.

Even if the evidence in this case were new, defendant cannot establish that the additional testimony would probably change the result on retrial. We recognize that a defendant is only required to state the "gist" of a meritorious claim in the first stage of proceedings. See *Gaultney*, 174 Ill. 2d at 418. However, the record positively rebuts defendant's allegation that the evidence was so closely balanced that this new evidence would have changed the result of his trial. See *Coleman*, 183 Ill. 2d at 382.

As we observed in defendant's direct appeal, the evidence indicating his guilt was "overwhelming." *Smith*, slip op. at 20, 25. Both ASA Sullivan and Detective Duffin testified that defendant provided them with an oral confession. They both relayed that defendant told them he went to codefendant Edwards' house the night of April 6, 1992, and Edwards told him there were some white guys outside trying to buy drugs. At Edwards' request, defendant agreed to help rob the men. On the way to 47th Street and Leamington Avenue, defendant took a shotgun from Edwards and removed the safety. He then saw some white men and called to them. When one of the men approached, defendant pointed the shotgun at him and demanded his money. The man said he did not have any money and began to walk away. Edwards said "shoot him," and defendant did.

The confession to which Sullivan and Duffin testified was also consistent with the testimony of the three eyewitnesses, Sramek, Severson and Queen. All three men testified that, after speaking to Edwards about purchasing drugs, Edwards returned to 47th Street and Leamington Avenue with another man, later identified as defendant. When Miranda approached Edwards and defendant, defendant pointed a shotgun at him and demanded his money. After Miranda refused, he turned around to walk away and defendant shot him.

Finally, Severson identified defendant as the shooter in a photograph array, in a lineup at the police station, and in court. Severson testified he and Queen were 10 yards (30 feet) away from defendant when he shot Miranda, and the area was well-lit by a streetlight and the lights from a billboard. See *People v. Dixon*, 133 Ill. App. 3d 1073, 1080 (1985) (positive identification by even a single witness is sufficient to support a conviction). Based upon the overwhelming evidence of defendant's guilt, we find that the proffered testimony, which might

have contradicted the testimony of five witnesses all implicating defendant as the shooter, is not of such a conclusive nature that it would probably change the outcome on retrial. See *People v. Harris*, 206 Ill. 2d 293, 301-02 (2002) (the affidavits of two witnesses recanting their trial testimony naming defendant as the shooter would not have changed the outcome on retrial where the defendant's conviction was also based on the testimony of another eyewitness who identified the defendant as the shooter, a codefendant who stated defendant was the shooter, and defendant's written statement).

Defendant cites to *People v. Burrows*, 172 Ill. 2d 169 (1996), arguing that the evidence in his case was closely balanced due to the unreliable nature of Severson's and Queen's identifications and the lack of physical evidence connecting him to the shooting. In *Burrows*, the defendant asserted a claim of actual innocence based on newly discovered evidence. He submitted two affidavits in support of his claim. The first was the affidavit of the State's key witness, who was also a codefendant in the case. In her affidavit, the codefendant recanted her testimony that the defendant had committed the murder with her, stating that she had acted alone. The second affidavit was signed by a disinterested witness who swore that the defendant was with her the night of the murder and that the codefendant admitted to her that she had committed the murder. In *Burrows*, the defendant's conviction had been primarily based on the testimony of two witnesses, one of whom recanted at an earlier date and the codefendant who recanted at the postconviction stage. Noting that the physical evidence supported the theory that the codefendant had committed the murder alone, the *Burrows* court found that the lack of intact witness testimony combined with the fact that there was no physical evidence tying the defendant to the crime warranted the granting of a new trial. *Burrows*, 172 Ill. 2d at 181-91.

We find that *Burrows* is distinguishable from the instant case. In this case, a significant amount of evidence would remain intact despite defendant's allegations of newly discovered evidence. Here, none of the witnesses who testified at defendant's trial recanted their testimony. Although there was no physical evidence connecting defendant to the shooting, the court was presented with direct and overwhelming evidence of defendant's guilt through the identification by Severson, defendant's oral confession to Duffin and Sullivan, and the corroborating occurrence testimony of Queen and Sramek. Contrary to defendant's contention, there is no evidence in the record showing that Severson's identification was unreliable. Severson testified at trial that he had consumed "a couple" beers prior to the shooting. He viewed defendant from 30 feet away, in a well-lit area, and

identified him within six weeks of the shooting. Although defendant mounts a strong challenge to the reliability of Queen's in-court identification, the remaining evidence, without considering Queen's identification, sufficiently supports defendant's convictions.

Defendant further argues that the closely balanced nature of the evidence is demonstrated by the fact that the jury had difficulty reaching an agreement. In support of this argument, defendant cites to *People v. Lee*, 303 Ill. App. 3d 356, 361-62 (1999). In *Lee*, this court invoked the plain error exception to the waiver rule after determining the evidence was closely balanced because the jury deliberated for seven hours and was deadlocked for four of those hours. On three occasions the jury indicated to the judge that it could not reach a unanimous verdict. *Lee*, 303 Ill. App. 3d at 361-62. One of the jury's notes specifically stated that the jurors were deadlocked based on the fact that they could not agree whether the victim's identification of the defendant was positive. *Lee*, 303 Ill. App. 3d at 361.

In this case, as previously detailed, the evidence in support of the verdict was clearly overwhelming in establishing defendant's guilt. It is true that the jurors sent a note to the trial judge after four hours of deliberation, stating they could not come to an agreement. Despite our decision in *Lee*, however, we agree with the trial court here that four hours was not a long enough interval to consider the jury deadlocked, given the amount of testimony in this case. Moreover, at best, a jury's difficulty in reaching a verdict is but a single factor in determining whether the evidence was closely balanced. See *People v. Ehlert*, 274 Ill. App. 3d 1026, 1035 (1995) (the jury's inability to reach a verdict after three days of deliberations, along with the fact that the evidence against the defendant was not overwhelming and the "[p]rosecutors virtually conceded in closing argument their inability to prove beyond a reasonable doubt the actual charge" demonstrated that the evidence was closely balanced). Furthermore, unlike *Lee*, the jurors in this case did not specifically indicate they were uncertain about the identification testimony. Because it is unknown why the jury may have had difficulty reaching an agreement, we must view the evidence objectively to determine whether it was closely balanced. Given that we have found the evidence against defendant to be overwhelming, the jury's deliberations alone do not indicate that the evidence was closely balanced.

In sum, we find that the affidavits of Edwards and Williams were not new and previously undiscoverable. Even if we were to consider the affidavits to be new, the evidence in this case is not closely balanced and defendant has not shown that the allegedly new testimony is so conclusive it would have changed the outcome of his trial. As a

result, defendant cannot satisfy the prejudice prong of the cause and prejudice test, nor would the claim have succeeded on its merits. Although a claim of actual innocence must be examined to determine whether its dismissal would amount to a fundamental miscarriage of justice, such a miscarriage occurs only in extraordinary circumstances where a constitutional violation has caused the conviction of a person innocent of the crime. *McCleskey*, 499 U.S. at 494, 113 L. Ed. 2d at 544-45, 111 S. Ct. at 1470. This is not one of those cases, as the overwhelming evidence discussed above amply supports defendant's convictions.

■ We reach a similar conclusion regarding defendant's contentions of ineffective assistance of trial counsel. Defendant first contends his trial counsel was ineffective for failing to present the exonerating testimony of Michael Williams. Again, this claim was not raised in defendant's original petition and we can discern no reason why the issue could not have been raised at that time, given defendant's allegation that Williams had been known to the defense at the time of trial. Therefore, the claim is waived.

That being said, defendant is further unable to establish that he suffered actual prejudice from the alleged error. To support a claim of ineffective assistance of trial counsel, a defendant must establish that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's alleged errors, there is a reasonable probability the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). A defendant must satisfy both the performance and prejudice prongs of the *Strickland* test to establish ineffective assistance. *Harris*, 206 Ill. 2d at 303-04. Therefore, where the underlying claim of ineffective assistance has no merit, we may also find that no prejudice resulted for purposes of the cause and prejudice test. See *Pitsonbarger*, 205 Ill. 2d at 465.

The failure to interview witnesses may indicate ineffective assistance of counsel particularly where the witness was known to trial counsel and his testimony may have been exonerating. *Coleman*, 183 Ill. 2d at 398. Although defendant alleges trial counsel knew about Williams and his alleged exonerating testimony, defendant cannot show that, but for counsel's failure to produce the testimony, there is a reasonable probability the result of the proceedings would have been different. As previously discussed in detail, the evidence of defendant's guilt was overwhelming given defendant's oral confession and Severson's identification. Again, Williams' affidavit is not of such magnitude that his testimony would have changed the outcome at trial. Therefore, defendant is unable to satisfy the prejudice prongs of both the *Strickland* test and the cause and prejudice test.

In further support of his ineffective assistance of trial counsel claim, defendant contends that counsel failed to call certain alibi witnesses to testify on his behalf. Defendant has not provided the names of the alleged alibi witnesses, nor has he attached their affidavits to his petition. The Act mandates that a postconviction petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122—2 (West 2000); *Collins*, 202 Ill. 2d at 66. Because defendant did not attach any affidavits, nor explain why none could be obtained, his claim fails on its merits. See 725 ILCS 5/122—2 (West 2000).

Citing *People v. Edwards*, 197 Ill. 2d 239 (2001), defendant argues in his reply brief that a defendant is not required to allege every fact that would support each element of his constitutional claim in order to survive summary dismissal of his petition. See *Edwards*, 197 Ill. 2d at 245. Although we agree, a defendant must at least present the limited amount of detail necessary to set forth the "gist" of a constitutional claim. See *Gaultney*, 174 Ill. 2d at 418. In arguing counsel failed to investigate his alibi defense and call alibi witnesses on his behalf, defendant must, at a minimum, provide the names of the alibi witnesses and state to what they would have testified. Absent these allegations, we cannot establish whether defendant was prejudiced by the court's failure to review this claim or whether the claim has any merit at all. See *Coleman*, 183 Ill. 2d at 381 (allegations in a postconviction petition must be specific and supported by fact).

Defendant further argues for the first time on appeal that his trial counsel was ineffective for failing to object to an erroneous jury instruction. At trial, defendant's jury was given Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992). The instruction reads as follows:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

[1] The opportunity the witness had to view the offender at the time of the offense.

[or]

[2] The witness's degree of attention at the time of the offense.

[or]

[3] The witness's earlier description of the offender.

[or]

[4] The level of certainty shown by the witness when confronting the defendant.

[or]

[5] The length of time between the offense and the identification confrontation." (Brackets in original.) Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992).

In *People v. Gonzalez*, 326 Ill. App. 3d 629 (2001), this court found that use of the word "or" between each factor listed above constituted plain error because it "implie[d], as a matter of law, that the identification testimony of an eyewitness may be deemed reliable if just one of the five factors listed weighs in favor of reliability." *Gonzalez*, 326 Ill. App. 3d at 640. We acknowledged in *Gonzalez* that the defendant did not preserve the error for review, but we declined to impose the waiver doctrine based on the fact that the evidence against the defendant was closely balanced. *Gonzalez*, 326 Ill. App. 3d at 635-36.

Based on *Gonzalez*, it is apparent that the instruction tendered in this case was improper; however, under the fundamental fairness doctrine, defendant must still show cause for his failure to raise the issue previously and actual prejudice resulting from the error alleged. Regarding the cause prong, we discern no reason why this issue could not have been raised in defendant's first petition. In fact, defendant had three opportunities to previously raise this claim—on direct appeal, in his first postconviction petition, and in his second postconviction petition. 725 ILCS 5/122—3 (West 2000); see also *People v. Davis*, 156 Ill. 2d 149, 158-59 (1993) (a claim of the denial of a constitutional right may not be raised for the first time on appeal). As a result, he cannot satisfy the cause requirement of the fundamental fairness test.

In addition, we again find that defendant cannot satisfy the prejudice prong due to the overwhelming nature of the evidence presented against him. For the same reason, the claim would fail even if reviewed on its merits. Unlike *Gonzalez*, the evidence in this case was not closely balanced. As stated previously, Severson made a reliable and positive identification of defendant five to six weeks after the shooting and two witnesses testified that defendant confessed to the attempted armed robbery and murder.

This court similarly distinguished *Gonzalez* in the case of *People v. Furdge*, 332 Ill. App. 3d 1019 (2002). In determining that the improper instruction was harmless error, the *Furdge* court commented that the State never mentioned the improper instruction during closing argument and the evidence was not closely balanced because the defendant was positively identified by an eyewitness and two occurrence witnesses corroborated the eyewitness' version of events. *Furdge*, 332 Ill. App. 3d at 1032; see also *People v. Brookins*, 333 Ill. App. 3d 1076, 1085 (2002) (where eyewitness identification was reliable and positive, instructional error did not affect the outcome of the trial). Similarly, the evidence in this case was not closely balanced due to an eyewitness

identification, corroboration by two witnesses of the eyewitness' version of events, and defendant's oral confession. Therefore, like in *Furdge*, the record before us positively rebuts defendant's contention that the improper instruction was outcome determinative. Accordingly, this claim is also waived and would fail even if reviewed on its merits.

Lastly, we find that defendant cannot satisfy the cause and prejudice test regarding his contention that his appellate counsel was ineffective. Defendant argues his appellate counsel provided him with deficient representation because he did not raise on direct appeal the trial court's error in overruling defendant's objection to Queen's in-court identification, his motion to strike Queen's testimony and his motion for a mistrial. Again, defendant fails to establish cause for not raising these claims in his initial postconviction petition, as all of these claims could have been raised at that time.

In addition, defendant cannot show he suffered prejudice given the overwhelming evidence presented against him at trial. As with defendant's contention of ineffective assistance of trial counsel, claims of ineffective assistance of appellate counsel are evaluated under the two-prong standard provided in *Strickland*. See *People v. Harris*, 206 Ill. 2d 1, 34 (2002); *People v. Mack*, 167 Ill. 2d 525, 532 (1995). Where the ineffective assistance claim fails on its merits, defendant likewise cannot show prejudice for purposes of the cause and prejudice test. *Pitsonbarger*, 205 Ill. 2d at 465.

Even without Queen's in-court identification, we have still determined that the evidence against defendant was overwhelming. Duffin and Sullivan's testimony regarding defendant's oral confession and Severson's positive identification were more than sufficient to sustain defendant's conviction. As a result, although counsel may have been deficient for not challenging the admission of Queen's in-court identification, defendant was not prejudiced by his failure to do so. See generally, *People v. Curtis*, 113 Ill. 2d 136 (1986) (admission of testimony regarding improper lineup identification found to be harmless where sufficient evidence existed to convict the defendant without the improper identification testimony). Therefore, his claim of ineffective assistance of appellate counsel not only fails the cause and prejudice test, but also fails on its merits.

## CONCLUSION

For the foregoing reasons, we find that the circuit court properly

548

dismissed defendant's successive post-conviction petition and its decision is therefore affirmed.

Affirmed.

McNULTY and O'MALLEY, JJ., concur.