2021 IL App (1st) 181942-U

Nos. 1-18-1942 and 1-18-1361 (cons.)

Order filed December 30, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 20687 |
| | ) | |
| JACOBY ADAMS, | ) | Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's dismissal of defendant's postconviction petition at the second stage is affirmed over his claim that the petition made a substantial showing of ineffective assistance of counsel on direct appeal.

¶ 2    Defendant Jacoby Adams appeals from the circuit court's second stage dismissal of his *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). Defendant claims that his petition made a substantial showing of ineffective assistance of counsel on direct appeal for not contesting the sufficiency of the evidence or claiming trial counsel

was ineffective for failing to move to strike a witness's identification of defendant due to suggestive identification procedures. We affirm.

¶ 3    Defendant was arrested following an incident on July 18, 2006, and charged by indictment with 12 counts, including count I for armed habitual criminal (AHC) (720 ILCS 5/24-1.7 (West 2006)) premised on possessing a firearm, and count III for unlawful use of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1 (West 2006)) premised on possessing a bullet. The State nol-prossed the other counts, and the matter proceeded to a jury trial.

¶ 4    At trial, Kelly Moore (Moore) testified that she knew "of" defendant, but did not know him personally. The prosecutor asked if Moore saw defendant in the courtroom, and she responded, "If I do, he doesn't look like the picture, he looks different. I am not sure."

¶ 5    On July 18, 2006, shortly after midnight, Moore was riding in a vehicle in Ford Heights, Illinois. Her sister-in-law, Rosa Stone, was driving, and four other passengers were present. Moore noticed the person she understood to be defendant on 11th Street. Defendant was wearing "dark colored clothes" and holding a "black shotgun" that was rusty with brown spots. He pointed the weapon at the vehicle while walking past one of the windows. Stone drove to the police station to file a report. As they drove away, Moore heard defendant discharge the weapon in the air.

¶ 6    The prosecutor showed Moore People's Exhibit No. 2, which Moore identified as a photograph of defendant in the clothing he was wearing on July 18, 2006.[1] Moore confirmed that defendant was the person who aimed the weapon in their vehicle's direction. The prosecutor next showed Moore People's Exhibit No. 5, which she recognized as the weapon due to its "brown stains."

---

[1] The photograph does not appear in the record on appeal.

¶ 7    On cross-examination, Moore testified that she went with Stone to the Ford Heights Police Station, but Stone filed the report. Moore acknowledged that the prosecutor did show her People's Exhibit No. 2 prior to trial and asked if the individual looked familiar. She did not know defendant. She also had never spoken to him prior to the incident and never identified him in a lineup.

¶ 8    Cook County Sheriff's Police Officer Edward Barksdale (Barksdale) testified that he and his partner responded to a report of shots fired near 15th Street and Ellis Avenue on July 18, 2006. During the investigation, Barksdale received a second call describing the shooter as an African American male dressed in all black who was holding some type of an assault rifle near 11th Street and Lexington Avenue. As he and his partner approached the area, Barksdale noticed an African American male dressed in all black and no one else was in the area at that time. Barksdale identified defendant in court as the individual he saw that evening.

¶ 9    Barksdale testified that he exited the police vehicle and asked defendant if he had heard any gunshots. He responded he had not. During the conversation, Barksdale's partner went to the area in which the officers first noticed defendant and recovered a semi-automatic weapon underneath a bush. The bush was two to three feet away from defendant's position when Barksdale first noticed him. The weapon was semi-automatic, made of rusty black steel, and had a "beat up wooden handle on the end."

¶ 10    The officers arrested defendant and placed him in their vehicle, which had vinyl seats. Barksdale also testified that Cook County Sheriff's Police Officer Darrell Bernard (Bernard), an evidence technician, arrived and attempted to perform a gunshot residue (GSR) test on defendant, who pulled his hands away. Bernard attempted the GSR test again at the police station, but defendant placed his hands in the toilet in his cell. Bernard pulled defendant away from the toilet

and performed the test. The prosecutor showed Barksdale People's Exhibit No. 2, and he testified that it was an accurate depiction of defendant as he appeared on July 18, 2006. Additionally, Barksdale testified he had recovered a bullet from defendant's person.

¶ 11    On cross-examination, Barksdale testified that when he and his partner responded to the call and arrived at 15th and Ellis and spoke to individuals in the area about the reported gunshot, none mentioned defendant. Approximately nine minutes later, they received a second call with the description of a man in black holding a firearm. When Barksdale first saw defendant, he was not holding a weapon nor making any suspicious movements. Barksdale also testified that defendant did not live on the property where the bush was located from where the rifle was recovered.

¶ 12    Bernard testified that he attempted to retrieve GSR samples from defendant's hands at the arrest scene, but defendant clenched his fists and sat on his hands. Bernard then attempted once more at the police station, but as Bernard entered the cell, defendant placed his hands in the toilet water. Two officers at the station had to subdue defendant, and Bernard was then able to collect the sample.

¶ 13    John Barloga, an evidence technician for the Cook County Sheriff's Police Department, testified that he recovered the rifle and its magazine, marked as People's Exhibit Nos. 5 and 6, from underneath a bush near the scene of defendant's arrest. He also recovered four rounds of "7.62 by 39 Wolf brand" from inside the rifle. On cross-examination, Barloga confirmed that no shell casings were recovered from the area of 15th and Ellis.

¶ 14    Deborah McGarry, a forensic scientist for the Illinois State Police, testified that she was not able to recover latent fingerprints from the rifle or magazine.

¶ 15    Robert Berk, a trace evidence analyst for the Illinois State Police, testified that he received the GSR samples from defendant's hands. Both hands tested "positive," which indicated that defendant "either discharged a firearm, contacted a primer [GSR] related item or had both hands in the environment of a discharged firearm." Berk further testified that several particles located in the GSR samples contained a detectable level of tin, which would normally be found in foreign ammunition, including the Wolf brand from Russia. Berk identified People's Exhibit No. 10A as a Wolf rifle round. According to Berk, the GSR on defendant's hands were consistent with the GSR produced by a discharged Wolf round.

¶ 16    On cross-examination, Berk agreed that GSR particles can be transferred from a surface to a person. In his experience, GSR did not transfer to individuals from the back seat of a police vehicle unless the seat was cloth. He also agreed that GSR could be on an officer's hands or the walls of a jail cell.

¶ 17    The State entered a stipulation that defendant had two or more previous convictions for forcible felonies.

¶ 18    Defendant's counsel in his motion for a directed verdict argued that Moore failed to identify defendant in court, and no other witnesses identified defendant as the individual holding the rifle. The court denied defendant's motion.

¶ 19    The State filed a motion *in limine* to prevent defendant from calling a forensic investigator regarding certain shell casings which were recovered in Ford Heights. According to the State, the casings had been analyzed to determine if they matched the rifle recovered in defendant's case, but it was never determined when the rounds were fired. The trial court granted the State's motion. The trial court also barred proffered defense witness Larry Hood, a "self-employed *** private

investigator and forensic consultant," from testifying as an expert as he lacked the necessary scientific training "to give an expert opinion about the science of [GSR]."

¶ 20    During closing arguments, the State argued that Moore identified defendant's photograph and the rifle in court. The prosecutor further emphasized the GSR evidence, defendant's efforts to prevent the GSR sample collection from being taken, and that the rifle was found "two to three feet" from where defendant was standing when Barksdale first noticed him. Defense counsel argued that the description over the police radio was too general. Therefore, Moore's identifications of both defendant and the rifle were suspect. Counsel also questioned the value of the GSR evidence as it did not establish defendant discharged or held the rifle, and there were multiple opportunities for transference of GSR from other surfaces to defendant's hands.

¶ 21    The jury found defendant not guilty of UUWF but guilty of AHC (720 ILCS 5/24-1.7 (West 2006)). The court denied his motion for a new trial, and, following a hearing, the court sentenced defendant to 30 years' imprisonment and denied his motion to reconsider sentence.

¶ 22    Defendant appealed, alleging the AHC statute was unconstitutional, a speedy trial violation, ineffective assistance of counsel, the trial court erred in pretrial rulings and by excluding Hood, and the court provided an erroneous response to a jury question. This court affirmed. *People v. Adams*, No. 1-08-0455 (2010) (unpublished order under Supreme Court Rule 23).

¶ 23    On May 20, 2011, defendant filed a *pro se* petition under the Act, claiming in relevant part that appellate counsel was ineffective for not alleging on direct appeal that (1) trial counsel was ineffective for not objecting to Moore's identification of defendant via photograph, and (2) the evidence was insufficient. Defendant later supplemented the petition.

¶ 24    The circuit court advanced the petition to the second stage, and the State moved to dismiss. On June 30, 2017, the circuit court granted the State's motion, finding in relevant part that defendant "was found guilty beyond a reasonable doubt [and] has failed to demonstrate otherwise." This appeal followed.

¶ 25    On appeal, defendant argues that his petition made a substantial showing that appellate counsel was ineffective for not bringing a sufficiency of the evidence claim as Moore's identification was unreliable, and for not arguing that trial counsel was ineffective for failing to move to strike Moore's identification of defendant due to suggestive identification procedures, namely, the prosecutor showed Moore a photograph of defendant just before trial.[2]

¶ 26    The Act provides criminal defendants with a mechanism for challenging their convictions on constitutional grounds. *People v. Dupree*, 2018 IL 122307, ¶ 28. Petitions brought pursuant to the Act are considered in three stages. *People v. Custer*, 2019 IL 123339, ¶ 29. The circuit court here dismissed defendant's petition at the second stage of review. At the second stage, a defendant's petition must make a substantial showing of a constitutional violation to advance to an evidentiary hearing. *Dupree*, 2018 IL 122307, ¶¶ 28-29. To make a substantial showing, the defendant must demonstrate that his well-pled allegations, if established at the evidentiary hearing, would entitle him to relief. *People v. Domagala*, 2013 IL 113688, ¶ 35. We review the circuit court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Cotto*, 2016 IL 119006, ¶ 24.

---

[2] On August 31, 2021, this court entered an order consolidating the instant appeal with a different appeal that defendant took from the same trial court proceedings, appeal No. 1-18-1361.

¶ 27    For a defendant to establish ineffective assistance of counsel on direct appeal for failure to raise a claim, he must demonstrate that the failure to bring the claim constituted objectively unreasonable conduct and prejudiced the defendant because there is a reasonable probability the claim would have succeeded had counsel raised it. *People v. Johnson*, 206 Ill. 2d 348, 377-78 (2002). To determine prejudice, the reviewing court must analyze the merits of the underlying claim. *Id.* at 378. Appellate counsel is not required to raise every conceivable claim, and cannot be found ineffective for forgoing unmeritorious claims. *Id.* If a defendant cannot establish one prong, the entire ineffective assistance claim fails, and the reviewing court need not discuss the other prong. *People v. Jackson*, 2020 IL 124112, ¶ 90.

¶ 28    Defendant first claims that counsel on direct appeal should have challenged the sufficiency of the evidence by arguing that Moore's identification was unreliable, and without the identification, the remaining evidence did not establish defendant was the individual who possessed the rifle.

¶ 29    On sufficiency of the evidence review, the reviewing court must construe all the evidence in the light most favorable to the State and determine whether any rational factfinder could have found the defendant guilty beyond a reasonable doubt. *People v. Hardman*, 2017 IL 121453, ¶ 37. All reasonable inferences are drawn in favor of the State. *Id.* The reviewing court will not substitute its judgment for that of the factfinder on the weight of the evidence or witness credibility. *Id.* The factfinder is not required to discard inferences that arise naturally from the evidence or elevate any theory of innocence to reasonable doubt. *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 35. The reviewing court should not reverse unless the evidence is so unsatisfactory or improbable that it creates reasonable doubt of the defendant's guilt. *Hardman*, 2017 IL 121453, ¶ 37.

¶ 30    To prove AHC, the State had to demonstrate that defendant possessed the rifle and had two or more qualifying convictions. 720 ILCS 5/24-1.7 (West 2006). Here, defendant only challenges possession.

¶ 31    Moore testified she noticed an individual she believed to be defendant carrying a rifle. Moore, however, could not identify defendant in court, and only identified him via photograph. Barksdale testified that he first saw defendant wearing clothing which matched the description Barksdale received by radio, standing two to three feet from where the officers later recovered the rifle. There was no one else in the area. After the arrest, defendant tried to avoid taking the GSR test by sitting on his hands and later placing his hands in the toilet in his holding cell. The testing revealed that defendant's hands were positive for GSR, and specific particles located in his GSR sample were linked to the particular type of round recovered from the rifle.

¶ 32    Based on this record, we find that defendant did not make a substantial showing of prejudice from appellate counsel's failure to contest the sufficiency of the evidence on direct appeal. Defendant's argument is based solely on the alleged unreliability of Moore's identification, but the remaining evidence, even absent Moore's identification, was sufficient to establish his guilt such that there is no reasonable probability the appellate court would have reversed had counsel on direct appeal raised a sufficiency argument. Thus, his underlying claim lacks merit.

¶ 33    The officers first noticed defendant two to three feet from the rifle with nobody else nearby. Defendant's GSR test results permitted the inference that he was in the proximity of discharged Wolf rifle rounds, the same rounds found in the chamber of the rifle. Additionally, defendant's conduct in placing his hands in the toilet is akin to evidence destruction, and a defendant's attempt to destroy evidence raises an inference of a guilty conscience. See *People v. Bean*, 137 Ill. 2d 65,

109 (1990). An inference which flows naturally from this evidence is that defendant discharged the rifle, discarded it in the bush, and upon his arrest, tried to conceal this fact by removing the GSR from his hands.

¶ 34    Defendant contends the evidence regarding possession is insufficient as the GSR testing did not conclusively establish he discharged the rifle, and the State did not introduce testing demonstrating that the rifle had been discharged. Defendant also argues that his fingerprints were not on the rifle, the officers did not see it in his hands, and he did not admit possession. But while these facts might permit competing inferences, they do not establish that his claim is meritorious. On sufficiency of the evidence review, all inferences must be drawn in favor of the State. *Hardman*, 2017 IL 121453, ¶ 37. And as described above, the evidence outside of Moore's identification allows the reasonable inference that defendant possessed the rifle. See *People v. Green*, 339 Ill. App. 3d 443, 452 (2003) ("The decision as to which of competing inferences to draw from the evidence is the responsibility of the trier of fact."). It follows that defendant cannot establish prejudice, and his ineffective assistance claim must fail.

¶ 35    Defendant next argues that counsel on direct appeal should have claimed that trial counsel was ineffective for failing to move to strike Moore's identification of defendant in court via photograph as the identification resulted from overly suggestive identification procedures. As discussed above, we must consider the underlying merits of this claim to determine if the petition makes a substantial showing of prejudice for purposes of ineffective assistance of counsel on direct appeal. *Johnson*, 206 Ill. 2d at 377-78. And as also discussed above, the trial evidence beyond Moore's identification was sufficient for a rational factfinder to find defendant guilty. It follows that this claim for ineffective assistance also lacks merit, as there is no reasonable probability the

result at trial would have been different had trial counsel moved to strike Moore's identification, and thus no reasonable probability the appellate court would have granted this claim had counsel raised it on direct appeal. See *People v. Smith*, 341 Ill. App. 3d 530, 547 (2003) (no ineffective assistance of appellate counsel where even if trial counsel had objected and successfully suppressed an identification, the remaining admissible evidence was sufficient to find the defendant guilty). Consequently, defendant cannot make a substantial showing of prejudice, and his claim fails.

¶ 36    For the foregoing reasons, the circuit court's dismissal of defendant's petition is affirmed.

¶ 37    Affirmed.