THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENDRICK JEFFERSON, Defendant-Appellant.

First District (4th Division)   No. 1—01—4483

Opinion filed October 23, 2003.—Rehearing denied November 25, 2003.—Modified opinion filed November 26, 2003.

Michael J. Pelletier and Elizabeth C. Smith, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINN delivered the opinion of the court:
The defendant, Kendrick Jefferson (defendant), appeals from an order of the circuit court dismissing his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 et seq. (West 2000)). On appeal, defendant argues that the trial court erred in dismissing the postconviction petition without appointing counsel where defendant stated the gist of a meritorious claim by asserting that (1) his trial counsel was ineffective for (a) failing to call an alibi witness; and (b) failing to explain why defendant's cellular phone records were exculpatory evidence; and (2) his appellate counsel was ineffective for (a) failing to raise the issue that defendant's confession was the fruit of an unlawful arrest and detention; and (b) failing to provide the appellate court with the transcripts of the hearing on the defendant's motion to suppress statements. For the reasons that follow, we affirm.

## BACKGROUND
The facts of this case are adequately set forth in this court's opinion on defendant's direct appeal (People v. Jefferson, No. 1—96—3830 (1999) (unpublished order under Supreme Court Rule 23)). Consequently, we will recite only those facts that are necessary to explain our decision.

In a bench trial before Judge Richard Neville, Herbert Taylor (Herbert) testified that on May 9, 1995, he was living about a block away from the defendant, who lived at 4707 West Ohio Street. Herbert had known the defendant for about eight years. Herbert further testified that Karl Taylor (victim) also lived in the vicinity. Herbert testified that the defendant owed the victim over $30,000.

Shortly before 8 p.m., Herbert and the defendant were in the victim's car. The victim asked the defendant about the money. The defendant claimed he would not be able to retrieve the money until his mother had gone to church. At about 8 p.m., the victim dropped Herbert off and told him to call the defendant and tell him that the victim wanted to pick up his money that night.

Herbert called the defendant's house at about 8:30 p.m. and at 8:45 p.m. Defendant's mother answered both calls. She told Herbert that the defendant was not home. Shortly after 8:45 p.m., the defendant returned Herbert's phone call and told Herbert to tell the victim that he could pick up the money that night.

Herbert went to the defendant's house to meet the victim. Herbert got into the front passenger seat of the victim's car. The victim then drove around to the alley behind the defendant's house. At this time, the defendant emerged, carrying a bag. The defendant got into the backseat of the victim's car.

Inside the car, the victim asked the defendant how much money was in the bag. The defendant responded that he only had $15,000 in the bag. The victim asked where was the rest of the money. At this moment, Herbert heard a "click," and then he heard the victim say, "Kenny, no." Herbert looked over to his left and saw the defendant holding a nickel-plated gun to the victim's head. Herbert immediately opened the car door and rolled out of the car even though the car was moving. As Herbert rolled out of the car, he heard a shot, then he heard several more shots. Herbert fled. While fleeing, Herbert heard the car crash. The car crashed in the alley halfway between 4707 and 4755 West Ohio Street.

Jimmy Fisher, a neighbor living at 547 North Cicero, testified. He testified that at about 9 p.m. on the night in question, he was in his kitchen watching TV when he heard two gunshots. He ran into the hallway and then heard two more gunshots.

Assistant State's Attorney (ASA) Mark Ertler testified that the defendant made an inculpatory statement that Ertler subsequently reduced to a handwritten statement that defendant signed. In the statement, the defendant admitted that for the eight months prior to the shooting, he had been holding a lot of money for the victim. On the evening in question, the victim demanded the money back. The defendant asked Herbert to bring the victim to the alley behind the defendant's house to pick up the money. Prior to meeting with the victim, the defendant obtained a silver-colored handgun. At about 9 p.m., the defendant, armed with the loaded gun, went to meet with the victim in the alley behind his house.

In the statement, the defendant further stated that the victim was driving and Herbert was in the front passenger seat. The defendant got into the backseat. When the victim asked the defendant where the money was, the victim slowed down as if to stop the car. The defendant said that he then pulled the gun out from his pants pocket and pointed it at the victim's back and shot the victim two or three times. Herbert rolled out of the car while it was moving. Herbert fled. With the victim now dead, the car crashed. The defendant got out of the car and dropped the gun as he ran down the alley. There was no one in the area at that time. The defendant ran to his own car and drove to his girlfriend Shanell Townes' house. He spoke with Townes for approximately 15 minutes and then drove to his father's house.

Detective Duffin testified that he interviewed the defendant on May 10, 1995. Detective Duffin "Mirandized" the defendant. The defendant admitted shooting the victim because he was unable to pay back the money that he owed the victim. The defendant said he was afraid the victim would have him beaten. The defendant further told Detective Duffin that while he, the defendant, was in the car with the victim and Herbert, the victim was driving the car. Herbert sat on the passenger side, and the defendant sat in the back. The defendant shot the victim twice, the car crashed and the defendant fled.

Betty Grandberry, the defendant's mother, testified for the defense that the defendant picked her up from work at about 6 p.m. At about 7 p.m., the defendant went out, returning home at 8 p.m. At about 8:15 p.m., the defendant told his mother that he was going to see Townes. After defendant had gone to see Townes, Grandberry answered two calls from someone asking for the defendant. The second call was at 8:45 p.m.

Townes testified that on May 9, 1995, she saw the defendant at about 7:15 p.m. and that at about 8 p.m. the defendant dropped her off at her house. At about 9:15 p.m., Townes paged the defendant. When the defendant returned her page, he was already in front of her house. Townes got into his car and they drove around for 20 minutes.

Defendant testified that after giving Townes a ride home the first time, he returned home by about 8 p.m. The defendant then went to see Angela Thomas (Thomas). When asked what time he arrived, the defendant answered "It had to be close to about 8:30 p.m." When asked how long he stayed at Thomas's house, the defendant answered "about 30 to 40 minutes." While the defendant was at Thomas's house, Townes paged him and asked to see him. The defendant drove back to Townes' home, and they drove up and down North Avenue. Townes told the defendant that she was pregnant. After approximately 20 minutes, the defendant dropped her off and called his father. The defendant then went to see his father. He arrived at his father's house at around 10:20 p.m.

Defendant testified that while he was at his father's house, he called his mother. His mother told him that the police were looking for him. The defendant then called the police. Afterward, the police met the defendant at his mother's house. The defendant testified that he voluntarily went with the police to the police station. After arriving at the police station, the defendant was placed in an interview room. The police checked his hands for "mud and blood" and questioned him about the shooting. The defendant testified that the police did not read his rights to him before questioning him.

The defendant testified that he denied holding money for the

victim or obtaining a gun. The defendant denied shooting the victim or throwing the gun and his clothes away as he fled the scene. The defendant testified that Detective Duffin took notes while questioning him. The defendant testified that ASA Ertler was not present. Later, Detective Duffin returned and read the preprinted portion of the statement to the defendant. However, the handwritten portion was not read to the defendant. The defendant signed the statement without reading it.

After hearing arguments presented by both sides, the trial court found the defendant guilty of first degree murder. The trial court stated that it believed the testimony of Herbert Taylor, Detective Duffin and ASA Ertler. The court found that the defendant shot and killed the victim because the defendant owed the victim money and he was afraid the victim would harm him for not returning the money. The trial court further found that the defense witnesses did not provide an alibi for the defendant. The court found that, with the exception of the defendant, the defense witnesses were credible but that their testimony as to the time that things occurred was amorphous and "not delineated with great specificity, because that's the way people live." The trial court sentenced the defendant to 25 years in prison.

On direct appeal, the defendant argued that (1) the statement attributed to him at trial differed significantly from the statement he actually made to the police; (2) even if the statement was properly attributed to him, it was insufficient to sustain his conviction because it was not sufficiently corroborated; (3) his confession should have been suppressed because he was detained without probable cause; and (4) his trial counsel was ineffective for failing to object to various hearsay statements.

This court reviewed the defendant's direct appeal and affirmed his conviction and sentence. *People v. Jefferson*, No. 1—96—3830 (1999) (unpublished order under Supreme Court Rule 23).

On April 19, 2001, the defendant filed a *pro se* postconviction petition claiming his constitutional rights were violated. The defendant alleged that: (1)(a) his trial counsel was ineffective for failing to interview and call Angela Thomas as an alibi witness, and (1)(b) appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to interview and call Angela Thomas as a witness; (2)(a) trial counsel was ineffective for failing to thoroughly investigate Herbert Taylor's motive to testify against the defendant, which resulted in an inadequate cross-examination, and (2)(b) appellate counsel was ineffective for failing to raise the issue that trial counsel did not thoroughly investigate Herbert Taylor; and (3)(a) trial counsel was ineffective for failing to explain how defendant's

cellular records were exculpatory evidence, and (3)(b) appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to explain how the telephone records were exculpatory evidence.

On May 4, 2001, a judge other than the judge who presided over the defendant's bench trial issued a six-page opinion summarily dismissing the defendant's postconviction petition because it was "untimely and without merit." In the written opinion, the court opined that even if the defendant's claims were not barred by time limitations, his position would not be much improved because the defendant's claim of ineffective assistance of trial counsel based on the failure to call Angela Thomas as an alibi witness was unfounded because her affidavit did not say that she was with the defendant at the time of the shooting. The court found that the other claims involved matters of record that either were raised or could have been raised on direct appeal. Hence, the court held these claims were barred from consideration in a postconviction proceeding by the doctrines of *res judicata* and waiver. Defendant now appeals.

On appeal, the defendant argues that the trial court erred in dismissing his postconviction petition without appointing counsel where (1) his trial counsel was ineffective for (a) failing to call Angela Thomas as an alibi witness; and (b) failing to explain why the defendant's cellular phone records were exculpatory evidence; and (2) his appellate counsel was ineffective for (a) failing to raise the issue that the defendant's confession was the fruit of an unlawful arrest and detention; and (b) failing to provide the appellate court with the transcripts of the hearing on the defendant's motion to suppress statements.

## ANALYSIS

■ In *People v. Rissley*, 206 Ill. 2d 403 (2003), our supreme court once again addressed the principles relating to postconviction proceedings.

> "A postconviction action is a collateral attack on a prior conviction and sentence. *People v. Brisbon*, 164 Ill. 2d 236, 242 (1995); *People v. Free*, 122 Ill. 2d 367, 377 (1988). As such, the remedy 'is not a substitute for, or an addendum to, direct appeal.' *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). The scope of the proceeding is limited to constitutional matters that have not been, nor could have been, previously adjudicated. Any issues which could have been raised on direct appeal, but were not, are procedurally defaulted (*People v. Ruiz*, 132 Ill. 2d 1, 9 (1989)) and any issues which have previously been decided by a reviewing court are barred by the doctrine of *res judicata* (*People v. Silagy*, 116 Ill. 2d 357, 365 (1987))." *Rissley*, 206 Ill. 2d at 411-12.

■ At the summary dismissal stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122—2.1(a)(2) (West 2000). A postconviction petition is frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the " 'gist of a constitutional claim.' " *People v. Edwards*, 197 Ill. 2d 239, 244 (2001), quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). As the "gist" standard is a low threshold, the postconviction petition only needs to present a limited amount of detail and does not need to set forth the claim in its entirety. *Edwards*, 197 Ill. 2d at 244, quoting *Gaultney*, 174 Ill. 2d at 418.

Our review of the circuit court's summary dismissal of the defendant's postconviction petition is *de novo. Edwards*, 197 Ill. 2d at 247. "[T]he question is, essentially, a legal one which requires the reviewing court to make its own independent assessment of the allegations. Thus, a court of review [is] free to substitute its own judgment for that of the circuit court in order to formulate the legally correct answer." *People v. Coleman*, 183 Ill. 2d 366, 388 (1998), quoted in *Edwards*, 197 Ill. 2d at 247.

At the outset, we note that the defendant did not assert in his postconviction petition that his appellate counsel was ineffective for failing to argue that the defendant's confession was the fruit of an unlawful arrest and detention.

Similarly, the defendant did not assert in his petition that his appellate counsel was ineffective for failing to provide the appellate court with the transcripts of the hearing on the defendant's motion to suppress statements.

In reply to the State's waiver argument, the defendant asserts in his reply brief that in fact he did allege in his postconviction petition that his appellate counsel was ineffective. In quoting the claims asserted in the petition, appellate defense counsel leaves out the word "this." The use of the qualifier "this" clearly indicates that the defendant was complaining of his appellate counsel's efforts only in regard to that lawyer's failure to argue that defendant's trial counsel was ineffective for: (1) failing to interview and call as a witness Angela Thomas; (2) failing to conduct a more thorough investigation of Herbert Taylor; and (3) failing to elaborate on the significance of the telephone records evidence. None of these issues involved an allegation that appellate counsel was ineffective for (1) failing to assert and argue that defendant's trial counsel was ineffective for failure to file a motion to quash defendant's arrest and suppress evidence; or (2) failing to provide the appellate court with the transcripts of the hearing on the defendant's motion to suppress.

Section 122—3 of the Post-Conviction Hearing Act provides: "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122—3 (West 2000). Thus, the issue we must initially decide is whether we can consider postconviction claims that are raised for the first time on appeal.

On appeal, defendant asserts that the issues of waiver and *res judicata* are not applicable to first-stage postconviction proceedings. The defendant relies on the fact that in deciding *People v. Boclair*, 202 Ill. 2d 89 (2002), our supreme court upheld the Fifth District Appellate Court's decision in *People v. McCain*, 312 Ill. App. 3d 529, 531 (2000). In *McCain*, the appellate court commented:

"In the dismissal order, the trial court did not find that the defendant's petition was frivolous and patently without merit. Rather, the trial court found that the petition was untimely and determined that the constitutional issues raised in the petition were either addressed on direct appeal or otherwise waived.

In our view, the trial court exceeded this very limited determination and assumed the adversarial role of the prosecutor. Here, the court raised issues of timeliness and *res judicata*, and then went on to make findings of fact and decide those issues." *McCain*, 312 Ill. App. 3d at 530-31.

The defendant correctly points out that a division of the First District has followed *McCain* and held that "the analysis the supreme court employed in *Boclair* to address the propriety of summarily dismissing a postconviction petition as untimely during a first-stage examination is equally applicable to first-stage dismissals based on grounds of waiver or *res judicata*." *People v. McGhee*, 337 Ill. App. 3d 992, 995 (2003). Unlike the supreme court in *Boclair* or the appellate court in *McCain*, the *McGhee* court considered section 122—2.1(c) of the Post-Conviction Hearing Act. 725 ILCS 5/122—2.1(c) (West 2000). Section 122—2.1(c) provides that, in considering a postconviction petition during the first stage of the proceeding, the trial court "may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." 725 ILCS 5/122—2.1(c) (West 2000). The *McGhee* court held that "the purpose of the examination authorized by this section is to enable the court to determine if the facts pled in the petition are positively rebutted by the record. Such a determination assists the court in resolving the issue of whether the petition is frivolous or patently without merit. *People v. Montgomery*, 327 Ill. App. 3d 180, 184, 763 N.E.2d 369 (2001)." *People v. McGhee*, 337 Ill. App. 3d at 996.

The *McGhee* court opined that this section did not authorize the trial court to examine the record to determine whether the principles of waiver or *res judicata* applied. The same division of this court which wrote *McGhee* followed its rationale in *People v. Blair*, 338 Ill. App. 3d 429, 431-32 (2003), *appeal allowed*, 205 Ill. 2d 594 (2003). Neither the *McGhee* nor the *Blair* opinion explains why it is permissible for a trial court to rely on the record in determining whether those claims in a petition that are rebutted by the record are patently without merit, but it is impermissible for the trial court to rely on the record in determining whether the principles of waiver or *res judicata* are applicable.

In *People v. Rogers*, 197 Ill. 2d 216 (2001), our supreme court reiterated that "any issues which were decided on direct appeal are barred by *res judicata*; any issues which could have been raised on direct appeal are forfeited." *Rogers*, 197 Ill. 2d at 221. *Rogers* affirmed the summary dismissal of a postconviction petition at the first stage. Section 122—2.1(c) of the Act provides that a court may "examine *** any action taken by an appellate court in such proceeding" in considering a postconviction petition at the summary dismissal stage. 725 ILCS 5/122—2.1(c) (West 2000). The holdings in *Blair* and *McGhee* are contrary to the plain language of the Act and the holding in *Rogers*.

In *People v. Smith*, 341 Ill. App. 3d 530, 794 N.E.2d 367 (2003), another division of the First District considered the holdings in *Boclair* and *McGhee* and distinguished the issue of timeliness from the issues of waiver and *res judicata*. The *Smith* court noted:

> "Timeliness is treated under a separate provision of the Act [(section 122—1(c) as opposed to section 122—3)] and, unlike waiver and *res judicata*, does not enter into a determination of the substantive merits of the petition as mandated under section 122—2.1(a)(2) [citation] ***. *** [T]he substantive scope and purpose of the Act was not designed to provide for the retrial of issues that either were previously decided or could have been raised and decided at an earlier time [previously citing *People v. Kitchen*, 189 Ill. 2d 424, 432 (1999), for this proposition]. Consequently, waiver and *res judicata*, although procedural constructs, are also substantive considerations to the extent that they define and limit the substantive scope and purpose of the Act." *Smith*, 341 Ill. App. 3d at 537, 794 N.E.2d at 376.

We agree with the reasoning of *Smith* and we decline to follow the holdings in *People v. McGhee*, 337 Ill. App. 3d 992, and *People v. Blair*, 338 Ill. App. 3d 429, as those cases are wrongly decided.

■ In the postconviction setting, the doctrine of waiver is implicated in three conceptually distinct situations. First, waiver bars

claims that a defendant failed to advance on direct appeal, if those claims are based on facts ascertainable from the record on appeal. See, *e.g., People v. Scott,* 194 Ill. 2d 268, 273-74 (2000); *People v. Adams,* 338 Ill. App. 3d 471, 475 (2003), citing *People v. Kitchen,* 189 Ill. 2d at 432. This general proposition is inapplicable when the alleged waiver stems from ineffective assistance of appointed counsel on appeal. *People v. Whitehead,* 169 Ill. 2d 355, 371 (1996), *overruled in part on other grounds, People v. Coleman,* 183 Ill. 2d 366 (1998).

Second, in the case of successive postconviction petitions, any claims that were not raised in the defendant's original or amended postconviction petition are waived. 725 ILCS 5/122—3 (West 2000); *People v. Britt-El,* 206 Ill. 2d 331, 338-39 (2002). Finally, a defendant may not raise for the first time on appeal constitutional claims that were not actually presented in his petition. *People v. Jones,* 341 Ill. App. 3d 103, 106 (2003), *appeal allowed,* 205 Ill. 2d 616 (2003), citing *People v. Britt-El,* 206 Ill. 2d at 339, and 725 ILCS 5/122—3 (West 2000). Any waiver that occurs in this last situation, by its own terms, could never have been the basis for a trial court's order of summary dismissal because the waived claim was not raised in the petition and was never before the trial court.

■ In an appeal from the summary dismissal of a postconviction petition, the issue before the reviewing court is "whether, pursuant to section 122—2.1(a)(2) of the Act, defendant's petition was properly dismissed at the first stage of the post-conviction proceedings. Thus, the issue before us is limited solely to whether defendant's 'petition is frivolous or is patently without merit.' 725 ILCS 5/122—2.1(a)(2) (West 1998)." *Edwards,* 197 Ill. 2d at 246-47.

At the first stage of a postconviction proceeding, our supreme court has held "[t]he circuit court is required to make an independent assessment in the summary review stage as to whether *the allegations in the petition,* liberally construed and taken as true, set forth a constitutional claim for relief." (Emphasis added.) *People v. Boclair,* 202 Ill. 2d 89, 99 (2002). Issues that are raised for the first time on appeal are by definition not "allegations in the petition."

■ Our supreme court recently addressed the applicability of section 122—3 to a claim that was raised for the first time on appeal rather than in a postconviction petition in *People v. De La Paz,* 204 Ill. 2d 426, 431-33 (2003). The slip opinion of *De La Paz* was originally filed on May 8, 2003, and the supreme court *sua sponte* filed a revised opinion on June 18, 2003. Confining our discussion of *De La Paz* to the revised opinion, the court quoted *People v. Burson,* 11 Ill. 2d 360, 370-71 (1957): " '[Waiver] is a rule of administration and not of jurisdiction or power, and it will not operate to deprive an accused of

his constitutional rights of due process.' " *De La Paz*, 204 Ill. 2d at 432. The court also pointed out "this court has 'the responsibility *** for a just result and for the maintenance of a sound and uniform body of precedent [that] may sometimes override the considerations of waiver that stem from the adversary character of our system.' " *De La Paz*, 204 Ill. 2d at 433, quoting *Hux v. Reben*, 38 Ill. 2d 223, 225 (1967). The *De La Paz* court went on to find that the State waived the issue of waiver by failing to raise it in its argument. The court then held "accordingly, we address the waived issue on the merits." *De La Paz*, 204 Ill. 2d at 433. Although none of the cases cited in *De La Paz* that relate to the waiver issue addressed under what circumstances the appellate court (as opposed to the supreme court) may decline to follow section 122—3's requisite of waiver, we will address the three principles considered by the *De La Paz* court—the need for a uniform body of precedent, the requirement of due process and waiver by the State.

In *De La Paz*, our supreme court held that the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), was not to be applied retroactively. It is difficult to imagine an issue that more desperately needed uniformity in its application than whether *Apprendi* applied to cases on collateral review or whether *Apprendi* could provide the basis for postconviction relief. If the facts in the present case present any issue as to the desirability of applying a uniform body of precedent, this factor would favor finding the claims raised for the first time on appeal to have been waived. After all, section 122—3 mandates that such claims are waived.

■ Further, finding the claims raised for the first time on appeal to be waived will not operate to deprive this defendant of due process. In his direct appeal, the defendant raised the argument that his confession should have been suppressed as the product of an unlawful arrest. He argued he was "seized" without probable cause from his home late at night and held in custody until he gave his written statement some 26 hours later. During this time he was not allowed to speak to his family. See *People v. Jefferson*, No. 1—96—3830, slip op. at 20-22 (unpublished order under Supreme Court Rule 23). In our decision, we pointed out that the trial court conducted an evidentiary hearing on a motion to suppress statements filed by defendant's trial counsel. Consequently, defendant's argument in this appeal—that prior appellate counsel was ineffective for failing to assert on appeal that petitioner's confession was the fruit of an unlawful arrest and detention—is directly contradicted by the record.

It is well settled that the dismissal of a postconviction petition may be upheld when the record from the original trial proceedings

contradicts the allegations in the defendant's petition. *People v. Rogers*, 197 Ill. 2d 216, 222 (2001), citing *People v. Coleman*, 183 Ill. 2d 366 (1998), and quoting *People v. Jones*, 66 Ill. 2d 152, 154 (1977). As our review is plenary (*People v. Coleman*, 183 Ill. 2d at 388-89), this rule should apply with equal force to claims raised for the first time on appeal.

We also reject the claim that defendant's prior appellate counsel was ineffective for failing to make the transcripts of the hearing on the motion to suppress the defendant's statements part of the record on appeal. The transcripts at issue have been made a part of the record in this case. As new appellate counsel points out in her statement of facts, the defendant testified at the hearing on his motion to suppress that he phoned the police and told them to meet him at his mother's house. During the hearing, the defendant testified that he told the police that he was with Shanell Townes at the time of the shooting. Defendant testified that he signed the statement before he left the police station to go to the polygraph examiner. At the conclusion of the hearing, the trial court denied the motion to suppress.

The trial court said it disbelieved the defendant's testimony. The court said it believed the detective's testimony that, after he had the results of the polygraph examination (which defendant failed) and after he had spoken to Herbert Taylor (who said defendant shot the victim), he confronted the defendant with this information and defendant then gave an inculpatory statement. It should be noted that at trial, defendant testified that he left with the police voluntarily. Further, defendant testified that Detective Duffin, not ASA Ertler, gave the written statement to the defendant. The defendant said he signed it without reading it. After the defendant testified during his trial, the trial court made a specific finding that it did not believe the defendant's testimony. In upholding a circuit court's decision refusing to suppress a defendant's confession, a reviewing court can consider evidence introduced at trial in addition to the evidence presented at the suppression hearing. *People v. Centeno*, 333 Ill. App. 3d 604, 620 (2002), citing *People v. Brooks*, 187 Ill. 2d 91, 127 (1999).

Based on all of the above facts, it is clear that our holding that the issues raised for the first time on appeal are waived does not violate defendant's constitutional right to due process. See *De La Paz*, 204 Ill. 2d at 432.

We also note that the State strenuously argued in its brief on appeal that section 122—3 of the Act requires that we find that any issue not raised in the defendant's postconviction petition is waived. Unlike the State in *De La Paz*, here, the State did not waive the issue of waiver. See *De La Paz*, 204 Ill. 2d at 433. Although we have found

the claims raised by the defendant for the first time on appeal to be waived and, waiver aside, to be meritless, we must still resolve the question of whether the trial court properly dismissed the petition as being untimely and meritless.

## UNTIMELINESS

■ For his first assignment of error, the defendant argues that the trial court erred when it held that his postconviction petition was untimely. In *People v. Boclair*, 202 Ill. 2d 89 (2002), our supreme court interpreted section 122—2.1(a)(2) of the Act (725 ILCS 5/122—2.1(a)(2) (West 2000)) as permitting the circuit court to dismiss a post-conviction petition at the initial stage *"only* if the petition is deemed to be 'frivolous or *** patently without merit,' not if it is untimely filed." (Emphasis added.) *Boclair*, 202 Ill. 2d at 100. The court further held that a postconviction petition may be dismissed based on untimeliness only if the State raises the issue in a motion to dismiss. *Boclair*, 202 Ill. 2d at 102. As a postconviction petition may not be dismissed as untimely during a first-stage review, the trial court improperly relied on the ground of timeliness in summarily dismissing the defendant's petition in this case.

## PATENTLY WITHOUT MERIT

The defendant's assertions that remain to be addressed in this appeal are that his trial counsel was ineffective for failing to call a corroborating alibi witness, Angela Thomas, to testify at trial and for failing to explain why defendant's cellular phone records were exculpatory evidence.

■ In order to succeed on a claim of ineffective assistance of trial counsel, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Enis*, 194 Ill. 2d 361, 376 (2000). The defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. at 698, 104 S. Ct. at 2068. Courts may resolve ineffectiveness claims under the two-part *Strickland* test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of counsel's performance. *People v. Coleman*, 183 Ill. 2d at 397-98.

In a petition for rehearing, defendant argues that the two-pronged standard announced in *Strickland* is "a higher standard than that mandated by the Post-Conviction Hearing Act for stage one *pro se* petitioners. *Edwards*, 197 Ill. 2d at 244." In holding that a postconviction petition need only present the "gist of a constitutional claim,"

*Edwards* followed clear precedent as established by the supreme court's decisions in *People v. Gaultney*, 174 Ill. 2d 416, 418 (1996), and *People v. Porter*, 122 Ill. 2d 64, 74 (1988). *Edwards* did not change the supreme court's standards for reviewing summary dismissals in any way. It certainly did not hold that the *Strickland* standards were not to be applied at the summary dismissal stage.

To the contrary, in *People v. Rogers*, 197 Ill. 2d at 223, the court applied the *Strickland* standards in affirming the summary dismissal of a postconviction petition which alleged that the defendant's trial counsel and appellate counsel provided ineffective assistance of counsel. The supreme court denied a petition for rehearing in *Rogers* 10 days *after* the opinion in *Edwards* was filed.

While the petitioner in *Rogers* was represented by counsel, this fact is not dispositive of the issue before us. In *People v. McGhee*, 337 Ill. App. 3d at 997-98, a case heavily relied upon by the defendant, this court relied on the *Strickland* standards in affirming the summary dismissal of the *pro se* petitioner's postconviction petition. Finally, we note that in his opening brief, Jefferson asserts that his trial and appellate counsel violated the standards set forth in *Strickland*. We hold that when determining whether a petition is frivolous or patently without merit pursuant to section 122—1 of the Act, the circuit court may apply the two-pronged *Strickland* test to claims of ineffective assistance of counsel.

In Angela Thomas's affidavit attached to the postconviction petition, she states that she and defendant "spent nearly an hour in one another's company." However, Thomas does not specify at what time the defendant arrived or when he left. At trial, the defendant testified that he arrived at Thomas's home "close to about 8:30 p.m." and he stayed for "about 30 to 40 minutes."

Herbert Taylor testified that he waited at the defendant's home until defendant arrived and they both got into the victim's car. The defendant shot the victim almost immediately upon getting into the victim's car. Jimmy Fisher testified at trial that he heard shots at "approximately" 9 p.m. Officer Conroy testified that he responded to the call "sometime around 9 and thereabouts."

Per defendant's testimony, he had left Thomas's home at "about" 9 to 9:10 p.m. Thomas lived at 5432 West Cortland Street and the shooting took place in the alley at 4755 West Ohio Street. These locations are approximately 20 blocks apart. Further, Thomas and Townes lived less than two blocks from each other.

■ After hearing all of the evidence at trial, Judge Neville specifically found that the defendant's witnesses did not know the exact times that they saw the defendant and that their testimony was cred-

ible because "that's the way people live." The trial court also pointed out that all of the defense witnesses put the defendant within a short distance of the scene of the shooting. The trial court said that the defense witnesses at trial did not present an "alibi." Similarly, the postconviction court pointed out that Thomas's affidavit "fails to indicate what time she was with the defendant or spoke to him on the phone." The court then held: "Clearly, presentation of testimony which does not indicate that petitioner was with someone else at the time of the crime would not be beneficial to the defense in any way. Accordingly, this court finds that counsel's decision [not to call Thomas as a witness] was sound and does not rise to the level of ineffective assistance." Applying this same rationale to the prejudice prong of *Strickland*, the defendant cannot demonstrate any prejudice resulting from the failure to call Thomas. There is no reasonable probability that had Thomas testified, the outcome would have been different.

Not only did Thomas's affidavit not say what time she was with the defendant, the affidavit contradicts the defendant's trial testimony that he was with Thomas for 30 to 40 minutes, not one hour. Further, as noted previously, the defendant testified during his suppression hearing that he was at Shanell Townes' home at the time of the shooting. Section 122—2.1(a)(2) of the Act permits trial courts to review the trial record and our supreme court has consistently upheld the summary dismissal of postconviction petitions when the record from the original trial proceedings contradicts the defendant's allegations and supporting documentation attached to the petition. *People v. Rogers*, 197 Ill. 2d 216, 222 (2001); *People v. Ramirez*, 162 Ill. 2d 235 (1994). "At the dismissal stage of a post-conviction proceeding, all well-pleaded facts *that are not positively rebutted by the original trial record* are to be taken as true." (Emphasis added.) *Coleman*, 183 Ill. 2d at 385.

It is only through reviewing the record of the trial court proceedings that a trial court can determine whether the allegations in a postconviction petition are positively rebutted by the record. If the claims made in a petition are positively rebutted by the record, they should not be taken as true. Rather, those claims that are positively rebutted by the original trial court record are patently without merit. Here, defendant's claim of ineffective assistance of trial counsel based on Thomas's affidavit is patently without merit.

■ The defendant's claim that his trial counsel was ineffective for failing to explain the significance of the phone records also requires a review of the record in order to determine whether it is without merit.

The fact that the defendant's phone records show that his phone was used to call Townes at 9:13 and 9:20 p.m., when considered with

the defendant's testimony that he was in front of her house at the time he called her the second time, would indicate that the defendant arrived at her home at 9:20 p.m. The calls to Thomas at 9:17 and 9:41 p.m. are also of little aid to the defendant. The evidence established that the murder took place at approximately 9 p.m. As the time of the defendant's phone calls does not support an inference that the defendant could not have committed the murder, it was not ineffective assistance by trial counsel to fail to argue such an inference. Also, the defendant cannot demonstrate any prejudice resulting from the failure to explain how the phone records exculpated the defendant. There is no reasonable probability that defendant's trial counsel could have explained the phone records in such a way that the trial's outcome would have been different.

For the foregoing reasons, we conclude that the defendant's post-conviction petition is patently without merit and we affirm the circuit court's summary dismissal of the petition.

Affirmed.

HARTMAN and GREIMAN, JJ., concur.