NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210032-U

NO. 4-21-0032

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 18, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| NICHOLAS ANTHONY COMPTON, | ) | No. 13CF418 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

---

JUSTICE DeARMOND delivered the judgment of the court.
Justices Holder White and Steigmann concurred in the judgment.[1]

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding defendant was not denied the reasonable
             assistance of postconviction counsel.

¶ 2     In January 2015, a jury found defendant, Nicholas Anthony Compton, guilty of

two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2012)) and four counts of

aggravated battery to a child (720 ILCS 5/12-3.05(b)(1), (2) (West 2012)), as a result of the

death of three-year-old R.C. In April 2015, the trial court sentenced defendant to life in prison

for first degree murder, a consecutive term of 30 years for one of the counts of aggravated

battery, and two concurrent terms of 4 and 5 years for additional counts of aggravated battery.

---

[1] Justice Lisa Holder White participated in this appeal but has since been appointed to the Illinois Supreme Court.
Our supreme court has held that the departure of a judge prior to the filing date will not affect the
validity of a decision so long as the remaining two judges concur. *Proctor v. Upjohn Co.*, 175 Ill.
2d 394, 396 (1997).

¶ 3        In February 2019, defendant, through retained counsel, filed a petition for

postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.*

(West 2018)). In November 2019, the trial court granted defendant's motion to advance the

petition to the second stage of postconviction proceedings. In January 2021, the court granted the

State's motion to dismiss defendant's amended postconviction petition.

¶ 4        On appeal, defendant argues he received unreasonable assistance of

postconviction counsel where counsel failed to strictly comply with the requirements of Illinois

Supreme Court Rule 651(c) (eff. July 1, 2017). We disagree and affirm.

¶ 5                                I. BACKGROUND

¶ 6        Around March 15, 2013, R.C.'s health began deteriorating. He complained of

stomach pain, nausea, diarrhea, and vomiting. Over the next few days, he lacked an appetite and

would often throw up anything he attempted to eat. In his final days, he consumed only

Pedialyte, as it was the only thing he could keep down. At approximately 4 a.m. on March 26,

2013, R.C. suffered a seizure and cardiac arrest. When medical personnel first arrived, they

found his stomach distended and his body gaunt and pale with various notable bruises. A few

hours later, R.C. died of bacterial sepsis (blood poisoning) and peritonitis (inflammation of the

thin tissue lining the inside of the abdomen). The pathologist determined R.C. suffered

lacerations of the pouch connecting the large and small intestine (cecum) and lacerations of the

peritoneum where it attached the intestines to the back wall of the abdomen (mesentery).

¶ 7        Defendant and others residing in the home were asked to come to the Normal

Police Department to be interviewed about R.C.'s death. Detective William Angus asked

defendant about previous instances when defendant physically disciplined R.C. Defendant

volunteered to write them down and requested a pencil and paper. Defendant was also

questioned by Molly Mintus, an investigator with the Illinois Department of Children and Family Services (DCFS). After the interview with Investigator Mintus, detectives arrested defendant.

¶ 8    In April 2013, a grand jury indicted defendant on multiple counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2), (a)(3) (West 2012)) (counts I, II, and III) and aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2012)) (count IV). In August 2013, a grand jury indicted defendant on additional counts of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2012)) (count V) and aggravated battery to a child (720 ILCS 5/12-3.05(b)(1), (b)(2) (West 2012)) (counts VI to XIII). Prior to trial, the State dismissed counts III, IV, VIII, IX, and XII.

¶ 9                           A. Jury Trial

¶ 10    At defendant's January 2015 jury trial, the medical examiner, Dr. John Scott Denton, detailed the nature and extent of the injuries to R.C. The autopsy found multiple abrasions to the back of R.C.'s head and neck, an injury to the mouth, abrasions on the sternum and chest, and numerous injuries to his back, including a honeycomb pattern of contusions on the head. Using autopsy photos, Dr. Denton detailed the injuries inflicted on R.C., indicating whether each was the result of an accident or intentional trauma. He stated the majority of R.C.'s injuries were "not injuries that a three year old would get from an accidental play or accidental tripping and running around" and were injuries "over a period of time." The doctor concluded by stating the cause of R.C.'s death was bacterial sepsis and peritonitis, which was caused by a "laceration and contusion of the cecum and the mesentery," the result of multiple incidents of blunt force trauma to his lower back, probably inflicted 7 to 10 days before his death. Dr. Denton categorized the fatal injury as caused by "severe" trauma, and in his opinion, the fatal injury was an inflicted, rather than accidental, injury. The peritonitis and sepsis caused R.C. to get very sick,

and his condition continually declined as the infection entered his bloodstream, causing severe pain, cramping, nausea, and diarrhea until eventually the blood flow to his brain ceased, causing a lack of oxygen, seizures, and ultimately death.

¶ 11       Jacob Cramer, R.C.'s father, described R.C. as a "typical two-year-old little boy." Cramer denied R.C. was clumsy and never saw R.C. with bruises. Cramer moved to Texas in November 2012, but he saw R.C. the following month, in December 2012. Cramer recalled when he visited R.C. in December, R.C.'s hair had begun to fall out.

¶ 12       Danielle Fischer, R.C.'s mother, described R.C. as a "typical two[-]year[-]old" and a "little hardheaded." On occasion, R.C. would inexplicably pinch himself but never hard enough to cause bruising. R.C. previously suffered no major injuries. This changed, however, when defendant became R.C.'s primary caretaker while R.C.'s mother worked. On three separate occasions, defendant texted R.C.'s mother informing her of yet another accident where R.C. sustained a visible injury. A child who had suffered few injuries prior to his association with defendant was now suffering frequent injuries. The repeated, unexplained injuries prompted R.C.'s mother to text defendant, stating: "[Defendant] idk [(I don't know)] if we can move n together just yet. I'm not comfortable with the fact that [R.C.] always has a new bruise every time he's w u [(with you)] & I'm not around. Especially if DCFS get involved in this." Despite her expressed concern, she moved herself and R.C. into defendant's residence, which he already shared with three other people. On March 17, 2013, after defendant informed Fischer of another visible injury, which defendant assured Fischer was "ok," Fischer sent a text message to defendant, stating: "No its not okay [defendant]! My kid has cuts & bruises all over! Its f*** ridiculous. I'm tired of everyday him having a new bruise or scrape. Clearly he's not being watched close enough which is a problem."

¶ 13          Dr. Janice Ophoven, an expert for the defense, testified she was a medical doctor with a specialization in pediatric forensic pathology. Dr. Ophoven testified she reviewed medical records, witness statements, and postmortem records concerning R.C. She opined R.C.'s death was caused by "complications of blunt force trauma to the abdomen resulting in terminal peritonitis and bacteria septicemia." Dr. Ophoven agreed with Dr. Denton the initial injury was a blunt force impact. However, Dr. Ophoven believed the fatal injury was to R.C.'s abdomen, rather than his back. She could not determine whether the injury was inflicted or accidental.

¶ 14          The jury found defendant guilty on both counts of first degree murder (counts I and II) and four counts of aggravated battery to a child (counts VI, VII, X, and XI). The jury also found defendant eligible for a life sentence because the murder was caused by "exceptionally brutal or heinous behavior, indicative of wanton cruelty." In April 2015, the trial court sentenced defendant to life in prison for first degree murder (count I), a consecutive term of 30 years for one of the counts of aggravated battery (count XI), and two concurrent terms of 4 and 5 years for the additional counts of aggravated battery (counts VII and X).

¶ 15                              B. Direct Appeal

¶ 16          On direct appeal, defendant argued (1) the trial court erred by denying his motion to sever the murder charges from the aggravated battery charges; (2) he received ineffective assistance of counsel where counsel (a) failed to file a motion to suppress his statements to police and (b) allowed the admission of autopsy photos of R.C.; and (3) the court improperly considered a factor in aggravation inherent in the offense during sentencing. We affirmed defendant's convictions and sentences. See *People v. Compton*, 2018 IL App (4th) 150504-U.

¶ 17                           C. Postconviction Petition

¶ 18        On February 19, 2019, defendant, through retained counsel, filed a postconviction petition arguing trial counsel was ineffective for failing to investigate and call witnesses, including defendant's brother Justin Smith and two individuals who had been present in the home, Justin Durham and Mike Covington. Postconviction counsel attached an affidavit from Justin Smith to the petition.

¶ 19        Smith's affidavit stated, in 2013, he attended an alternative high school in Bloomington and was regularly in the house with defendant and R.C. from approximately 12 p.m. to 10 p.m. each day. According to the affidavit, Smith never saw defendant alone with R.C., R.C. in distress around defendant, nor defendant physically discipline R.C. Smith described R.C. in November 2012, as looking "sickly." Smith never considered R.C. to be a "healthy child." Smith asserted he witnessed Fischer's ongoing neglect of R.C. Smith identified other individuals, namely Durham and Covington, who would "testif[y] that they observed [defendant] providing appropriate care to R.C."

¶ 20        The trial court took no action on defendant's petition. On August 5, 2019, postconviction counsel filed a motion to advance defendant's petition to the second stage of postconviction proceedings, which the court allowed. On September 8, 2020, postconviction counsel filed an amended postconviction petition arguing (1) ineffective assistance of trial counsel for failing to investigate and call potential witnesses, namely Justin Smith, Justin Durham, and Mike Covington and (2) ineffective assistance of appellate counsel for failing to raise meritorious issues on direct appeal. Postconviction counsel attached Justin Smith's affidavit to the amended petition and filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 21        The State filed a motion to dismiss defendant's petition, arguing (1) defendant did not argue trial counsel was aware of the aforementioned potential witnesses, (2) Smith's testimony would have been similar to testimony already presented at trial, (3) Smith's asserted testimony would have been rebutted by Dr. Denton's testimony and thus, Smith would have been impeached had he testified. The State also rebutted defendant's claims of ineffective assistance of appellate counsel not relevant to this appeal.

¶ 22        On January 12, 2021, the trial court conducted a hearing on the State's motion to dismiss defendant's amended postconviction petition. Following argument, the court granted the State's motion. As to defendant's claim of ineffective assistance of trial counsel, the court found:

            "In looking at the *Strickland* standard, is there prejudice here. You know, to the extent that we are going to argue that Justin Smith's evidence or affidavit supports some other cause of death, that is just not plausible. Dr. Denton's testimony was so specific that the bruise on I believe it was the lower right corner of [R.C.]'s back, and it was incredibly different than all the other bruising on [R.C]'s back, and it coincided exactly with the perforation of his intestines which led to the sepsis which led to his death. So the fact that—the idea that this child was long suffering neglect by his mother, there's some truth to that, and I think the evidence bore that out.

            The mother's neglect was also, just like [defendant], in not getting the child taken care of after the child was injured because they didn't want DCFS involved, they didn't want the child's father to get custody or the child's family to get custody, that was all presented. So the idea that that affidavit is to the cause of death issue is ridiculous. I don't mean that to be derogatory, but there's no

- 7 -

rational trier of fact that could say I'm going to believe a 14- or 15-year-old over Dr. Denton, a forensic pathologist who testified in detail regarding the cause of death.

Let's go back to the first part of *Strickland*. I got ahead of myself a little bit. That is it must be unreasonable. The one thing I see as really missing here, how the heck would—defense attorneys are not supposed to or are not required to be clairvoyant. How are they supposed to know about this? There is nothing in the defense's petition, there's no affidavit, there's no assertion that the defense attorneys were ever told of this witness, that there was any indication of this witness ***. There's no assertion anywhere where the defense was given any indication of the existence of this witness, and without that assertion, without some evidence to that line, I don't see how the defense attorney can possibly be unreasonable because, as I said before, they're not expected to be clairvoyant.

* * *

*** It seems to me that there may be some value to some of this, but that value would be minimal, and it would be very difficult to understand, for instance, that this evidence, taken in the light most favorable to [defendant], would persuade much of anyone when [defendant]'s own statements don't support this, and that his brother was there. *** So I think that it is difficult to accept some of the all-encompassing assertions of Mr. Smith, and as I said earlier, in regard to the cause of death issue, it's just not even plausible. It's just not even plausible to accept the words of Justin Smith in comparison to Dr. Denton, and no reasonable trier of fact would be persuaded to that effect.

The evidence was clear regarding the conditions of the minor victim here, [R.C], and so I don't see that the testimony of Justin Smith adds much of anything that would exonerate the defendant. I believe that addresses the ineffective assistance of counsel."

¶ 23 This appeal followed.

¶ 24 II. ANALYSIS

¶ 25 On appeal, defendant argues postconviction counsel (1) failed to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and (2) provided unreasonable assistance of counsel where he failed to (a) assert trial counsel was aware of witness Justin Smith, whose affidavit postconviction counsel attached to defendant's amended postconviction petition, or (b) attach the affidavits of two potential defense witnesses, Justin Durham and Mike Covington.

¶ 26 A. Postconviction Act

¶ 27 The Act "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1075 (2010). The Act establishes a three-stage process for adjudicating a postconviction petition. *People v. English*, 2013 IL 112890, ¶ 23, 987 N.E.2d 371. To survive a motion to dismiss from the State at the second stage of postconviction proceedings and advance to a third-stage evidentiary hearing, the defendant's petition "must make 'a substantial showing of a violation of constitutional rights.' " *People v. Wingate*, 2015 IL App (5th) 130189, ¶ 24, 31 N.E.3d 75 (quoting *People v. Coleman*, 183 Ill. 2d 366, 381, 701 N.E.2d 1063, 1072 (1998)). "When a trial court dismisses a petition for postconviction relief at the second stage of proceedings," as it did here, this court "review[s] that dismissal *de novo*, taking as true all well-pleaded facts that are not positively rebutted by the trial

record." *Wingate*, 2015 IL App (5th) 130189, ¶ 24 (citing *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006)).

¶ 28    In this case, defendant does not challenge the trial court's dismissal of his petition at the second stage of proceedings but instead alleges his postconviction counsel's performance was unreasonable.

¶ 29                                    B. Rule 651(c)

¶ 30    Defendant contends postconviction counsel provided unreasonable assistance by failing to make necessary amendments to the petition or provide supporting affidavits in violation of Rule 651(c).

¶ 31    The right to counsel in a postconviction proceeding is not constitutional but rather statutory in nature. *People v. Lander*, 215 Ill. 2d 577, 583, 831 N.E.2d 596, 600 (2005). A postconviction petitioner is therefore only entitled to the level of assistance provided by the Act. *People v. Flores*, 153 Ill. 2d 264, 276, 606 N.E.2d 1078, 1084 (1992). "Rule 651(c) imposes specific obligations on postconviction counsel to assure the reasonable level of assistance required by the Act." *Lander*, 215 Ill. 2d at 584. Under that rule, postconviction counsel must (1) consult with the defendant whether by mail or in person to ascertain the contentions of depravation of constitutional rights, (2) examine the record of the trial court proceedings, and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the defendant's contentions. *People v. Perkins*, 229 Ill. 2d 34, 42, 890 N.E.2d 398, 403 (2007). Our supreme court has consistently held remand is required when postconviction counsel fails to complete any one of the above duties, regardless of whether the claims raised in the petition have merit. *People v. Suarez*, 224 Ill. 2d 37, 47, 862 N.E.2d 977, 982 (2007).

¶ 32        However, "Rule 651(c) applies only to a postconviction petition initially filed by a *pro se* defendant." *People v. Cotto*, 2016 IL 119006, ¶ 41, 51 N.E.3d 802. In this case, retained postconviction counsel filed defendant's initial petition. Accordingly, we do not address postconviction counsel's compliance with Rule 651(c), as counsel had no *specific* duty to amend the postconviction petition for the adequate presentation of defendant's contentions. Rather, "both appointed and privately-retained counsel must provide 'reasonable assistance.' " *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 51, 84 N.E.3d 527 (quoting *Cotto*, 2016 IL 119006, ¶ 41).

¶ 33        Similarly, we are not limited by the supreme court's holding in *Suarez*. As the First District determined, "[t]he real key of the *Suarez* holding was not that Suarez's counsel had provided unreasonable assistance, but that Suarez's counsel had violated a supreme court rule." *Zareski*, 2017 IL App (1st) 150836, ¶ 55. That failure justified remand regardless of the merit of the defendant's claims. *Zareski*, 2017 IL App (1st) 150836, ¶ 55. Where a defendant retains counsel at the first stage of proceedings, "he or she is entitled to reasonable assistance, but not to the additional protections of Rule 651 and *Suarez*'s holding." *Zareski*, 2017 IL App (1st) 150836, ¶ 55.

¶ 34                        C. Reasonable Assistance of Counsel

¶ 35        The Act "requires postconviction counsel to provide a reasonable level of assistance to a defendant." (Internal quotation marks omitted.) *Lander*, 215 Ill. 2d at 583-84. "Reasonable assistance" is a lesser requirement than the "effective assistance" described in *Strickland v. Washington*, 466 U.S. 668 (1984). *Zareski*, 2017 IL App (1st) 150836, ¶ 50.

>           "Strictly speaking, a defendant is entitled to less from postconviction counsel than
>           from direct appeal or trial counsel. The flip side of this principle is that it should
>           be even more difficult for a defendant to prove that he or she received

unreasonable assistance than to prove he or she received ineffective assistance under *Strickland*." *Zareski*, 2017 IL App (1st) 150836, ¶ 50.

¶ 36 It stands to reason that, if postconviction counsel's performance cannot be deemed ineffective under *Strickland*, it cannot be deemed unreasonable under the Act. *People v. Hotwagner*, 2015 IL App (5th) 130525, ¶ 37, 40 N.E.3d 1235. We use a "*Strickland*-like analysis" to evaluate defendant's claim counsel provided unreasonable assistance, examining (1) whether counsel should have presented or amended defendant's claims and (2) whether counsel's failures caused prejudice. *Zareski*, 2017 IL App (1st) 150836, ¶¶ 59, 61. "To establish the prejudice prong [under *Strickland*], defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Jackson*, 205 Ill. 2d 247, 259, 793 N.E.2d 1, 9 (2001). As such, if we determine the potential claim had no merit, then the defendant "cannot receive postconviction relief on that claim, regardless of whether [postconviction counsel] should have presented it earlier, better, or at all." *Zareski*, 2017 IL App (1st) 150836, ¶ 61.

¶ 37                                          1. *Justin Smith*

¶ 38 Defendant first claims postconviction counsel provided unreasonable assistance by failing to assert in defendant's amended postconviction petition trial counsel was aware of defendant's witness Justin Smith and failed to investigate Smith.

¶ 39 In this case, the trial court determined defendant's claim trial counsel was ineffective for failing to investigate Smith and call him as a witness at trial was without merit. First, the court found defendant had failed to argue trial counsel knew of Smith as a potential witness, which defendant claims here was due to postconviction counsel's error. However, the court also determined, even had defendant provided such proof, defendant was not prejudiced by

trial counsel's actions where the averments in Smith's affidavit were positively rebutted by the record. We agree.

¶ 40 Smith averred, to his knowledge, "[defendant] was never in the house alone with R.C." and Smith "never saw [defendant] physically discipline R.C." The evidence presented at trial demonstrated, however, that R.C. suffered repeated injury in defendant's care. Multiple text messages between Fischer and defendant showed R.C. sustained new and significant injuries in defendant's care on at least three occasions. Fischer complained R.C. "always" had a new bruise or scrape when defendant was his primary caretaker. Testimony from Smith that he never personally witnessed defendant "physically discipline" R.C. would not dispute the evidence R.C. was injured repeatedly and significantly in defendant's care. Additionally, Dr. Denton's testimony disputed Smith's assertion ongoing neglect on the part of Fischer led to R.C.'s death. Defendant's own witness, Dr. Ophoven, testified the cause of R.C.'s death was complications from a blunt force injury, not ongoing neglect. Regardless of any lack of care provided by other parties, R.C.'s death was caused by a traumatic physical injury. Smith's testimony of ongoing neglect would not have undermined the evidence as to R.C.'s cause of death.

¶ 41 As Smith's affidavit is positively rebutted by the record, any claim trial counsel erred by not investigating Smith or calling him as a witness is without merit. Defendant thereby suffered no prejudice. See *Zareski*, 2017 IL App (1st) 150836, ¶ 61.

¶ 42 2. *Justin Durham and Mike Covington*

¶ 43 Defendant next claims postconviction counsel was ineffective for failing to attach affidavits for potential witnesses Justin Durham and Mike Covington or explain their absence.

¶ 44 In defendant's amended postconviction petition, Durham and Covington are referenced as "witnesses like Smith." Neither Durham nor Covington are referenced by name.

Rather, Smith identifies Durham and Covington in his affidavit when he explains as follows: "Multiple other individuals who were at the house at the time period in which the injuries were alleged to have occurred would have testified that they observed [defendant] providing appropriate care to R.C. These individuals are Justin Durham and Mike Covington." Defendant does not explain in his appellate brief what Durham and Covington would have testified to beyond "cover[ing] times when Smith was not around and providing further support for the defense."

¶ 45        As discussed above, Smith's affidavit was positively rebutted by the record. See *People v. Jefferson*, 345 Ill. App. 3d 60, 76, 801 N.E.2d 552, 565 (2003) ("If the claims made in a petition are positively rebutted by the record, they should not be taken as true."). Durham and Covington's testimony would have likely been consistent with Smith's as they were individuals present in the home "around the time period" R.C. suffered injuries. Testimony defendant provided appropriate care for R.C. in the presence of others would have been positively rebutted by (1) Dr. Denton's testimony R.C.'s death was caused by a traumatic physical injury and (2) the text messages that demonstrated R.C. suffered a multitude of injuries while in defendant's care.

¶ 46        As the evidence defendant argues Durham and Covington could have presented is positively rebutted by the record, any claim trial counsel erred in not calling them as witnesses is without merit. Therefore, defendant was not prejudiced by postconviction counsel's omission of their affidavits. See *Zareski*, 2017 IL App (1st) 150836, ¶ 61.

¶ 47                              III. CONCLUSION

¶ 48        For the reasons stated, we affirm the trial court's judgment.

¶ 49        Affirmed.