2021 IL App (1st) 182285-U

No. 1-18-2285

Order filed September 23, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 89 CR 2894 |
| | ) | |
| RAMON DELGADO, | ) | Honorable |
| | ) | Matthew E. Coghlan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant failed to make the requisite *prima facie* showing of prejudice to obtain leave under the cause and prejudice test to file his fourth successive postconviction petition where the eighth amendment protection under the United States Constitution prohibiting the imposition of life sentences upon juvenile defendants absent consideration of their youth and attendant characteristics did not apply to defendant because he was 22 years old when he committed the offenses.

¶ 2    In 1992, defendant Ramon Delgado was found guilty of two counts of first-degree murder following a jury trial and sentenced to a mandatory term of life imprisonment without the

possibility of parole. This court affirmed his conviction and sentence on direct appeal. *People v. Delgado*, 282 Ill. App. 3d 851 (1996).

¶ 3     This appeal follows the denial of defendant's motion for leave to file a fourth successive postconviction petition. In this appeal, he contends he sufficiently demonstrated cause and prejudice for leave to file his petition because his mandatory life sentence is unconstitutional as applied to him under the eighth amendment of the United States Constitution where he was 22 years old when he committed the offense, and his drug addiction played a substantial role in his crime.

¶ 4     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                    I. BACKGROUND

¶ 6     In January 1989, defendant fatally stabbed two individuals. The evidence presented to the jury showed that, prior to the offense, defendant, the two victims, and another individual, who was the daughter of one of the victims, were smoking cocaine in the victims' apartment. Defendant became angry and accused the others of stealing his cocaine. The police were called, and defendant left the apartment. Defendant, however, returned, saying that he wanted to apologize and make it up to the others by getting more cocaine from his house. One victim and her daughter drove defendant to his house, where instead of more cocaine he obtained a kitchen knife and concealed it underneath his coat. When he returned to the car, he told the others that he "got it," and they drove back to the victims' apartment. Once inside the apartment, defendant took the knife from his coat and stabbed the two victims. Defendant subsequently provided incriminating statements

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

to the police and an assistant state's attorney. At the trial, defendant testified that he stabbed the victims in self-defense or acted under the unreasonable belief that he needed to use self-defense. The jury found defendant guilty of the first-degree murder of the two victims.

¶ 7    Defendant waived a jury for the death eligibility determination and sentencing, and the death penalty hearing was convened. The trial court found him eligible for the death sentence because he was convicted of killing two people and the State had proven beyond a reasonable doubt that he was 22 years old at the time of the offense.

¶ 8    In aggravation, the state presented evidence regarding defendant's prior offense of attempted theft of a jewelry store. Specifically, about 10 days before defendant committed the murders at issue here, he unsuccessfully tried to break into a jewelry store by striking the plate glass window with a tire iron. An off-duty police officer pursued defendant first by car and then on foot into a nearby alley. After the officer displayed his badge and handgun, defendant lunged for the officer's gun. Both the officer and defendant slipped, and the gun accidently discharged, striking defendant in the leg. Defendant was arrested and released on bail.

¶ 9    In mitigation, the defense presented the testimony of defendant's high school internship manager, a college counselor, a coworker, a mitigation specialist, and a teacher at the jail to show that defendant's initial success at school and work was derailed when his concerns about his ability to financially support himself and his child caused him to struggle, leave college and turn to illegal drug use. In allocution, defendant said that he was raised by a wonderful family but his illegal drug use destroyed his life. He also expressed remorse to the victims' families for his crime. The court found sufficient mitigating factors to preclude the imposition of the death penalty and imposed the mandatory alternate, a life sentence.

¶ 10    On direct appeal, defendant argued that he was improperly denied a jury instruction on second-degree murder based on provocation and the trial court improperly admitted the medical examiner's testimony regarding cocaine found in the victims' bodies. *Delgado*, 282 Ill. App. 3d at 852. In 1996, we affirmed defendant's conviction and sentence. *Id*. at 859.

¶ 11    In 1997, Defendant filed his initial petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 1996)), and a subsequent supplemental petition. He asserted a number of allegations of ineffective assistance of counsel, including trial counsel's failure to properly raise the defense of voluntary intoxication and present readily available evidence sufficient to establish that defense. The trial court summarily dismissed defendant's petition and supplement as without merit, and this court affirmed that dismissal in 1999. *People v. Delgado*, No. 1-97-2954 (1999) (unpublished order under Supreme Court Rule 23).

¶ 12    In 2001, defendant filed his first successive postconviction petition, claiming that his natural life sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and trial counsel was ineffective for failing to present evidence of voluntary intoxication. The trial court summarily dismissed defendant's first successive postconviction petition, and this court affirmed that decision in 2002. *People v. Delgado*, No. 1-01-3456 (2002) (unpublished order under Supreme Court Rule 23).

¶ 13    In 2003, defendant filed a *pro se* section 2-1401 petition for relief from judgment (735 ILCS 5/2-1401 (West 2002)), arguing that his natural life sentence exceeded the statutory maximum authorized by law. The trial court *sua sponte* dismissed defendant's petition as untimely under section 2-1401(c). In 2005, this court affirmed the trial court's dismissal of defendant's

section 2-1401 petition. *People v. Delgado*, 1-03-1874 (2005) (unpublished order under Supreme Court Rule 23).

¶ 14    In 2011, defendant filed his second successive postconviction petition, again claiming his trial counsel was ineffective for failing to raise the defense of voluntary intoxication and present readily available evidence sufficient to establish that defense. Defendant also filed a motion to add missing pages and exhibits from his initial postconviction petition, including his medical records and doctors' reports, which he claimed were not considered by the trial court prior to the dismissal of his initial postconviction petition. In June 2012, the trial court summarily dismissed the petition as frivolous and patently without merit and also found that defendant failed to satisfy the cause and prejudice test. The court found that defendant's claims were barred by the doctrine of *res judicata* and trial counsel's decision to pursue a theory of self-defense over a theory of voluntary intoxication did not support a claim of ineffective assistance of counsel. The court also found that there was little evidence to support a claim of voluntary intoxication, so even if that theory of defense had been presented, it was unlikely to succeed. In 2013, this court affirmed the dismissal of defendant's second successive postconviction petition. *People v. Delgado*, 2013 IL App (1st) 122368-U.

¶ 15    Meanwhile, in December 2012, defendant requested leave to file his third successive postconviction petition, which alleged that his trial and appellate attorneys were ineffective. Defendant claimed that trial counsel was ineffective for failing to present the defenses of drug-induced intoxication, diminished capacity, and temporary insanity. Defendant also claimed again that pages of his initial postconviction petition, which supported his alleged chronic drug use, were missing and not considered by the trial court.

¶ 16    In 2013, the trial court denied defendant leave to file his third successive postconviction petition based on his failure to satisfy the cause and prejudice test. In summarily dismissing his petition, the trial court stated that defendant's ineffective counsel claims had been adjudicated and dismissed a total of four times, so defendant suffered no prejudice from the alleged missing pages in his initial petition. Moreover, defendant's counsel was not ineffective for failing to present the suggested defenses of drug induced intoxication, diminished capacity, and temporary insanity because those defenses would not have been viable where defendant had testified at the trial that he smoked cocaine prior to the murder and stabbed the victim in self-defense after the victim came after him with a knife when petitioner accused him of stealing his cocaine. Likewise, appellate counsel was not ineffective for failing to raise that issue on appeal. Finally, defendant's claim of ineffective counsel against his first attorney, who withdrew from representing defendant, was not clear and merely stated the facts surrounding counsel's withdrawal from representation. In 2016, this court affirmed the dismissal of defendant's third successive postconviction petition. *People v. Delgado*, 2016 IL App (1st) 131741-U.

¶ 17    In 2018, defendant sought leave to file the instant fourth successive postconviction petition, citing *Miller v. Alabama*, 567 U.S. 460 (2012), and claiming that his life sentence violated the eighth amendment. Defendant alleged that he was 22 years and 4 months of age at the time he committed the two murders and recent research in neurobiology and developmental psychology has shown that the brain development of young adults was more similar to that of adolescents than fully mature adults. Specifically, young adults and adolescents were less future-oriented, more susceptible to peer pressure, and more volatile in emotionally charged settings. Defendant also argued that his drug addiction and depression played a substantial role in his crime and, even

though some of those mitigating factors were presented to the trial court at his death penalty hearing, "they were not available to be considered before imposing a mandatory natural life sentence." In support of his petition, defendant submitted one page of the sentencing hearing and several medical records from two hospitals and one medical center. The medical records showed that defendant received treatment for stabbing himself and was diagnosed with PCP dependence and depression.

¶ 18    On August 31, 2018, the trial court denied defendant leave to file this fourth successive postconviction petition. The trial court found that defendant demonstrated cause under *Miller* because that case and its progeny were not available when he filed his earlier postconviction petitions. However, the court found that he failed to demonstrate prejudice because Illinois precedent held that *Miller* did not apply to adult offenders. Finally, the court acknowledged that defendant did not advance a claim under the proportionate penalties clause of the Illinois Constitution but nevertheless addressed that issue and distinguished defendant's case from cases where the defendants were not the sole offender and their participation in the offenses were limited.

¶ 19    Defendant timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, defendant argues that the trial court erred in denying him leave to file his fourth successive postconviction petition because he satisfied the cause and prejudice test and his petition raised a viable claim that his natural life sentence is unconstitutional as applied to him under the eighth amendment of the United States Constitution.[2] He asserts that the law in effect at the time

---

[2] Defendant's appeal does not include a claim that his sentence is unconstitutional under the proportionate penalties clause of the Illinois Constitution.

of his sentencing gave the trial court only the binary choice to sentence him to either death or life imprisonment and thereby prevented the court from considering his status as an emerging adult offender. According to defendant, that binary choice resulted in the imposition of his life sentence without the consideration of the transient qualities of his youth or a specific finding that he was irreparably incorrigible. He argues that the evolving legal standards concerning the sentencing of adolescents and emerging adults afford him the opportunity to file his successive petition and develop the record to support his as-applied charge.

¶ 22    Defendant cites *People v. Harris*, 2018 IL 121932, ¶ 45, to support his assertion that emerging adult petitioners like him have a right to plead as-applied challenges to their sentences under the eighth amendment and *Miller*. According to defendant, in *Harris*, the Illinois Supreme Court explicitly identified postconviction proceedings as the proper vehicle for an as-applied constitutional challenge to a defendant's sentence. Moreover, because an as-applied challenge depends on the specific facts and circumstances of the person raising the challenge, the substantive analysis of defendant's claims should await this court's remand, where counsel can be appointed and the claims can be developed.

¶ 23    Defendant argues that he should be allowed to file this successive postconviction petition because he satisfied the cause and prejudice test. Specifically, he asserts that he demonstrated cause because the cited legal authority supporting his claim—*i.e*, *Miller*, which held that the eighth amendment prohibits sentencing laws mandating life in prison without the possibility of parole for juvenile offenders, and the cases following *Miller*—were not available during his prior proceedings. He also asserts that he demonstrated prejudice where his life sentence arguably

violates *Miller* because a mandatory life sentence was imposed on him without consideration of the impact of his still-developing young adult brain and drug addiction on his thought processes.

¶ 24   The Act provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Eddmonds*, 143 Ill. 2d 501, 510 (1991). The Act contemplates the filing of only one postconviction petition (*People v. Flores*, 153 Ill. 2d 264, 273 (1992)), providing that any claim not raised in the original or amended petition is subject to the doctrines of *res judicata* and waiver (725 ILCS 5/122-3 (West 2016); *People v. Smith*, 341 Ill. App. 3d 530, 535 (2003)). However, the filing of a successive postconviction petition may be allowed where the proceedings on the initial petition were fundamentally deficient. *Flores*, 153 Ill. 2d at 273-74. Specifically, the waiver provision can be lifted and a successive petition can be considered on the merits if it either meets the cause and prejudice test of section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2016)), or its consideration is necessary to prevent a fundamental miscarriage of justice because the defendant shows a claim of actual innocence (*People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 25   A defendant seeking to file a successive postconviction petition must first obtain leave of court. *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010). Here, defendant seeks leave to file his fourth successive postconviction petition under the cause and prejudice test of section 122-1(f) of the Act, which provides:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of the court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this

subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122–1(f) (West 2016).

We review *de novo* the denial of a defendant's motion for leave to file a successive postconviction petition (*People v. Wrice*, 2012 IL 111860, ¶ 50), and may affirm the denial on any ground of record (*People v. Johnson*, 208 Ill. 2d 118, 129 (2003)).

¶ 26   A defendant's motion for leave to file a successive postconviction petition satisfies the section 122-1(f) cause and prejudice requirement if the motion adequately alleges facts demonstrating cause and prejudice. *People v. Smith*, 2014 IL 115946, ¶ 34. Moreover, the cause and prejudice test for successive petitions involves a higher standard than the frivolous or patently without merit standard applied to first-stage postconviction petitions. *Id*. ¶ 35. A defendant seeking leave to file a successive petition must submit enough in the way of pleadings and documentation to allow a circuit court to make an independent determination on the legal question of whether adequate facts have been alleged for a *prima facie* showing of cause and prejudice. *Id*.

¶ 27   If a defendant fails to adequately allege cause and prejudice, the circuit court does not reach the merits of his successive petition because the cause and prejudice test is a procedural prerequisite to obtaining that review. *People v. Welch*, 392 Ill. App. 3d 948, 955 (2009). "If the court determines that cause and prejudice have been adequately alleged and allows the petition to be filed, it advances to the three-stage process for evaluating postconviction petitions. During this

process, the State would have an opportunity to seek dismissal of the petition on any grounds, including the defendant's failure to prove cause and prejudice for not having raised the claims in the initial postconviction petition." *People v. Bailey*, 2017 IL 121450, ¶ 26.

¶ 28    Our supreme court has held that "leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35. For the reasons that follow, we conclude that defendant cannot establish prejudice to obtain leave to file his fourth successive postconviction petition because his claims are not legally cognizable.

¶ 29    The eighth amendment prohibits "cruel and unusual punishments" and applies to the states through the fourteenth amendment. U.S. Const. amend. VIII; *People v. Davis*, 2014 IL 115595, ¶ 18. The United States Supreme Court has held that the eighth amendment prohibits (1) capital sentences for juveniles who commit murder (*Roper v. Simmons*, 543 U.S. 551, 578-79 (2005)), (2) mandatory life sentences for juveniles who commit nonhomicide offenses (*Graham v. Florida*, 560 U.S. 48, 82 (2010)), and (3) mandatory life sentences for juveniles who commit murder (*Miller*, 567 U.S. at 489). *People v. Buffer*, 2019 IL 122327, ¶ 16.

¶ 30    In *Miller*, 567 U.S. at 471, the Supreme Court stated that "children are constitutionally different from adults for purposes of sentencing." The lack of maturity and underdeveloped sense of responsibility of children leads to "recklessness, impulsivity, and heedless risk-taking." (Internal quotation marks omitted.) *Id.* Children are also more vulnerable to negative influences and outside pressures, have limited control over their own environment, and "lack the ability to

extricate themselves from horrific, crime-producing settings." *Id.* Their character is not as well-formed as an adult's, their traits are "less fixed" and their actions are "less likely to be evidence of irretrievable depravity." (Internal quotation marks omitted.) *Id. Miller* requires sentencing courts in homicide cases to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. In *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016), the Supreme Court found that *Miller* applies retroactively.

¶ 31    The Illinois Supreme Court interpreted *Miller* to apply to discretionary life sentences, finding that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." *People v. Holman*, 2017 IL 120655, ¶ 40. Before a trial court may sentence a juvenile defendant to life without parole, the court must consider several factors, including his age at the time of the offense and any evidence of his particular immaturity, impetuosity and failure to appreciate risks and consequences, his family and home environment, his degree of participation in the homicide, and his prospects for rehabilitation. *Id.* ¶ 46.

¶ 32    Defendant contends that *Harris*, 2018 IL 121932, gives him the right to plead in a postconviction petition an as-applied constitutional challenge to his life sentence under the eighth amendment and *Miller*. We conclude, however, that *Harris*, which was a direct rather than a collateral appeal, does not support defendant's contention.

¶ 33    In *Harris*, the 18-year-old defendant challenged his sentence as unconstitutional in (1) an as-applied challenge under the proportionate penalties clause of the Illinois Constitution, and (2) a facial challenge under the eighth amendment. See 2018 IL 121932, ¶¶ 34-48, 49-61. Regarding his proportionate penalties clause challenge, which the defendant raised for the first

time on appeal, he argued that the sentencing statute that resulted in him receiving a mandatory minimum aggregate sentence of 76 years' imprisonment was unconstitutional as applied to his specific circumstances because he had no prior criminal history and had several other attributes that reflected his rehabilitative potential. Because the defendant did not raise this as-applied challenge in the trial court, an evidentiary hearing was not held on his constitutional claim and the trial court did not make any findings of fact on his specific circumstances. *Id.* ¶ 40. Furthermore, because the defendant was an 18-year-old adult, *Miller* did not apply directly to his circumstances. *Id.* ¶ 45. Accordingly, the supreme court found that the defendant's as-applied proportionate penalties clause claim was premature because the record did not "contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the *Miller* decision applie[d] to [the] defendant's specific facts and circumstances. *Id.* ¶ 46. The supreme court stated that the record needed to be developed and the defendant's claim was more appropriately raised in another proceeding, such as a proceeding under the Act. *Id.* ¶ 48. This portion of *Miller's* analysis under the proportionate penalties clause hardly supports defendant's assertion here that he is entitled to file a fourth successive postconviction petition to raise an as-applied challenge under the eighth amendment.

¶ 34    Regarding *Miller's* analysis of the defendant's facial challenge to his sentence under the eighth amendment, the court ruled that this challenge failed because (1) the defendant, as an 18 year old, fell on the adult side of the line that marks the age of 18 as the present line between juveniles and adults, (2) the Supreme Court in *Roper*, 543 U.S. at 574, drew the line at age 18 because society has drawn that line between childhood and adulthood for many purposes, and (3) the supreme court agreed with the decisions of federal and state courts of appeal, including this

court, that repeatedly rejected claims to extend *Miller* to offenders 18 years of age or older. *Harris*, 2018 IL 121932, ¶¶ 60-61.

¶ 35   Defendant attempts to evade this holding in *Harris* by labeling his eighth amendment challenge to his mandatory alternative sentence of natural life an as-applied rather than a facial challenge. However,

> "facial and as-applied constitutional challenges are not interchangeable. An as-applied challenge requires a showing that the statute is unconstitutional as it applied to the challenging party's specific circumstances. [Citation.] In contrast, a facial challenge requires the challenging party to establish that the statute is unconstitutional under any possible set of facts. [Citation.]" *Id*. ¶ 52.

Here, the trial court's discretion in sentencing defendant was limited by statute to determining whether to impose the death penalty or the mandatory alternate sentence of life imprisonment without the possibility of parole. The court found sufficient mitigating factors to preclude the imposition of the death penalty and imposed the mandatory alternate, a life sentence. That alternate life sentence was mandated by the legislature; thus, any constitutional violation in this case was necessarily committed, not by the trial court when the sentence was applied, but by the legislature when the sentencing statute was enacted. See *id*. ¶¶ 70-73 (Burke, J., concurring). Consequently, "defendant's claim cannot be an as-applied challenge" (*Id*. ¶ 71), and his eighth amendment challenge to his natural life sentence fails because he was 22 years old when he murdered the two victims and the *Miller* protections afforded to juveniles do not extend to defendants aged 18 years and older. *Id*. ¶ 61.

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 38    Affirmed.